**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Maria Yanibe MONTILLA, Defendant–Appellant.**

**No. 88–5177.**

United States Court of Appeals, Ninth Circuit.

Submitted February 6, 1989.*

Decided March 20, 1989.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R. App.P. 34(a); Ninth Circuit Rule 34–4.

Wayne R. Young, O'Neill & Young, Santa Monica, Cal., for defendant-appellant.

Stephen G. Wolfe, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE, FARRIS and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Maria Montilla appeals her conviction upon a plea of guilty of conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1982). Montilla argues that the "outrageous conduct" of federal agents violated her due process rights, and that this due process argument was not waived by her plea. We affirm the conviction, but vacate the $50 special assessment.

I

Montilla is a citizen of Colombia. In 1985 she entered the United States illegally. She came to know her codefendant, Hector Hernandez, and moved into an apartment in Los Angeles with him. Montilla had polio as a child and wished to obtain money to pay for an operation on her legs. In August 1987, Montilla met a man named Johnny at a dance. Johnny suggested that Montilla could make money selling cocaine. He arranged a meeting between Montilla and a government informant, Roberto. Montilla sold cocaine to Roberto on two occasions. She obtained the cocaine from Hernandez. Roberto told Montilla that he could introduce her to a physician who could help her obtain medical treatment if she sold cocaine to the physician.

On September 2, 1987, "Dr. Victor Guevara" contacted Montilla by means of a beeper Montilla carried. "Dr. Guevara" was, in fact, Special Agent Victor Guerrero of the FBI, posing as a physician. Guerrero had several meetings with Montilla, during which Montilla agreed to sell him ten kilos of cocaine—the transaction to be arranged by Hernandez. Hernandez attended some of the meetings. At others, Montilla and Guerrero met alone. Guerrero flirted with Montilla, and she apparently

became attracted to the handsome "doctor". Guerrero indicated that he would help her obtain medical treatment, although he made no specific promises, and also told her that she should get a job that offered medical insurance.

On October 6, 1987, Montilla delivered the ten kilos of cocaine to Guerrero and was arrested. She was charged with conspiracy to possess cocaine, 21 U.S.C. § 846, and possession of ten kilos of cocaine with intent to distribute. 21 U.S.C. § 841(a)(1). The possession charge carried a ten-year mandatory minimum sentence. 21 U.S.C. § 841(b)(1)(A)(ii)(II) (Supp. IV 1987). The conspiracy count did not carry a mandatory minimum. *See* 21 U.S.C. § 846. The government offered Montilla a plea bargain; she could plead guilty to the conspiracy count in exchange for dismissal of the possession charge.

Montilla filed a pretrial motion to dismiss the indictment for outrageous government conduct, and requested an evidentiary hearing. Montilla's attorney attempted to paint a lurid picture for the district court of a helpless young woman forced to enter the drug trade by evil government agents preying upon her need for an expensive operation. The government countered with allegations that Montilla lived with a professional cocaine dealer, that she carried a beeper so she could help him with deliveries, and that she was certainly no stranger to the drug trade.

On February 16, 1988, the district court denied the motion for an evidentiary hearing. The court decided to delay consideration of the motion to dismiss until trial. The court did not want to spend a day hearing pretrial testimony that would be duplicated at the trial if the motion was denied. Accordingly, the court refused to rule on the motion until the evidence at trial was heard. This ruling conflicted with Montilla's tactical needs, because she wanted to test her outrageous conduct claim prior to trial. The government re-fused to consent to a conditional plea, and the plea bargain was off if the case went to trial. Montilla's brief sums up her predicament, as she saw it, very well: "A pretrial hearing would provide her [the] only opportunity for a judicial ruling on the government's misconduct because she was not going to risk a ten-year minimum sentence by asserting a misconduct defense at trial...."

On March 7, 1988, Montilla renewed her motion for a pretrial hearing on her motion to dismiss. The judge informed her attorney that he was not able to arrange his schedule solely to strengthen defendants' plea bargaining positions, and that he would rule on the motion at trial. He told counsel that it was time for Montilla to "fish or cut bait." Montilla cut bait, pleading guilty to the conspiracy count. She was sentenced to five years in prison.

Montilla timely appeals. Fed.R.App.P. 4(b). We have jurisdiction. 28 U.S.C. § 1291 (1982). We review the questions of law raised in this appeal de novo. *In re McLinn*, 739 F.2d 1395, 1398 (9th Cir.1984) (en banc). We review the timing of an evidentiary hearing for abuse of discretion. *United States v. Layton*, 720 F.2d 548, 553 (9th Cir.1983), *cert. denied*, 465 U.S. 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984).

## II

The due process defense [1] based upon the alleged outrageous conduct of government agents is often pleaded, but is very rarely successful. *See United States v. Pemberton*, 853 F.2d 730, 735 (9th Cir.1988) (per curiam) (noting that defense has been successfully used to dismiss an indictment only once in the Ninth Circuit). The defense is based upon the Supreme Court's 1973 dictum that a case may arise presenting "a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from involving judicial pro-

---

1. We refer to Montilla's claim, using common parlance, as a "defense". We note, however, that her argument that the government is constitutionally barred from bringing an indictment must be distinguished from an affirmative de-fense, such as the entrapment defense often raised under similar facts. *United States v. Bogart*, 783 F.2d 1428, 1432 n. 2, *vacated in part on other grounds*, 790 F.2d 802 (9th Cir.1986).

cesses to obtain a conviction...." *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973).[2] Because we recognize that "government agents may lawfully use methods that are neither appealing nor moral if judged by abstract norms of decency," we have interpreted *Russell* extremely narrowly. *Bogart,* 783 F.2d at 1436, 1438. Our test is whether the conduct "shock[s] the conscience." *Id.* (*citing, e.g., Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)). The defense is limited to police conduct involving "unwarranted physical, or perhaps mental, coercion" or "those hopefully few cases where the crime is fabricated *entirely* by the police...." *Bogart,* 783 F.2d at 1438; *see also United States v. Simpson,* 813 F.2d 1462, 1468 (9th Cir.) (government's use of informant who entered into sexual relationship with defendant did not violate due process), *cert. denied,* —— U.S. ——, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987).

Before we need apply this narrow defense to the facts before us, however, we must address the threshold question of whether Montilla's plea of guilty waived the defense.

### III

■ As a general rule, a guilty plea erases claims of constitutional violation arising before the plea. *E.g., Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). Montilla relies upon an exception to this general rule. In *Blackledge v. Perry,* 417 U.S. 21, 30, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628 (1974), the Court held that a meritorious claim of prosecutorial vindictiveness amounting to a due process violation survived a guilty plea, because the claim "went to the very power of the State to bring the defendant into court...." The following year, the Court extended *Blackledge* to a double jeopardy claim. *Menna v. New York,* 423 U.S. 61, 62, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975) (per curiam).

The dividing line between the majority of constitutional claims waived by a voluntary plea of guilty, and those that challenge the right of the state to hale the defendant into court, and thus survive the plea under *Blackledge,* has not been crystal-clear. *See generally* W. LaFave & J. Israel, *Criminal Procedure* § 20.6 (1984).

■ We have called successful *Blackledge* challenges "jurisdictional" claims. *United States v. Broncheau,* 597 F.2d 1260, 1262 n. 1 (9th Cir.), *cert. denied,* 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979). Claims that "the applicable statute is unconstitutional or that the indictment fails to state an offense" are jurisdictional claims not waived by the guilty plea. *Id.* We have not extended *Blackledge* and *Menna* beyond the specific claims alleged in those cases. *See Marrow v. United States,* 772 F.2d 525, 529 (9th Cir.1985).

■ The Supreme Court recently clarified the *Blackledge–Menna* doctrine in a way that forecloses Montilla's reliance upon it. Emphasizing *Menna*'s holding that "a plea of guilty to a charge does not waive a claim that—*judged on its face*—the charge is one which the State may not constitutionally prosecute," the Court limited the doctrine to cases in which the judge could determine at the time of accepting the plea, from the face of the indictment or from the record, that the government lacked the power to bring the indictment. *United States v. Broce,* —— U.S. ——, 109 S.Ct. 757, 765, 102 L.Ed.2d 927 (1989) (quoting and emphasizing *Menna,* 423 U.S. at 63 n. 2, 96 S.Ct. at 242 n. 2). In contrast to *Menna, Broce* involved a claim (double jeopardy as a result of two indictments for only one conspiracy) that could not be proven by examining the face of the indictments or the record at the time of the plea, but required further proceedings. *Broce,* 109 S.Ct. at 766. Therefore, defendants' decision to end the proceedings by pleading guilty admitted their crimes and foreclosed appeal of the waived claim. *Id.*

---

**2.** The case cited by *Pemberton* as the only Ninth Circuit dismissal based on the defense was, interestingly, a pre-*Russell* case. *Pemberton,* 853

F.2d at 735 (citing *Greene v. United States,* 454 F.2d 783 (9th Cir.1971)).

*Broce* controls. Montilla could not prove her allegations without an evidentiary hearing or trial testimony. On its face, the indictment alleged offenses that were well within the government's power to prosecute. The record at the time the judge accepted Montilla's plea contained allegations of unconstitutional behavior, but establishing their truth required further proceedings. The *Blackledge–Menna* exception does not apply. The guilty plea waived the due process claim.

## IV

We find no impropriety in the conduct of the prosecutors or the judge. Montilla had no constitutional right to a plea bargain. *United States v. Osif,* 789 F.2d 1404, 1405 (9th Cir.1986). A forced choice between asserting a constitutional right at trial and accepting the government's offer, while undoubtedly difficult, is not unconstitutional. *See United States v. Brooklier,* 685 F.2d 1208, 1216 (9th Cir.1982) (per curiam), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983).

Nor did the district judge abuse his discretion by postponing his ruling until trial, or by denying a pretrial evidentiary hearing. *United States v. Thompson,* 558 F.2d 522, 525 (9th Cir.1977), *cert. denied,* 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978); Fed.R.Crim.P. 12(e) (pretrial motion may be deferred until trial for good cause, unless appeal rights are adversely affected). The court's desire to avoid lengthy duplication of testimony provided good cause for the deferral.[3] *See United States v. Shortt Accountancy Corp.,* 785 F.2d 1448, 1452–53 (9th Cir.) (when evidence required to rule on pretrial motion is not "entirely segregable" from evidence to be presented at trial, district court has discretion to defer decision), *cert. denied,* 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). The district courts do not operate to assist defendants in their plea-bargaining. Montilla had no right to test her outrageous conduct defense before having

to decide whether to plead guilty. This is not an appeal of the district court's adverse determination. *See* Fed.R.Crim.P. 11(a)(2). Rather, it is an "appeal" of a ruling the district judge never made, because the claim was abandoned for tactical advantage. The waiver could not have been more specific and knowing. We emphasize that we may only reach the merits of appeals of *adverse determinations* of pretrial motions *pursuant to a conditional plea of guilty according to Fed.R.Crim.P. 11(a)(2),* unless the very narrow post-*Broce Blackledge–Menna* doctrine allows us to do so. *See Bogart,* 783 F.2d at 1431 (reviewing conditional plea allowing appeal of denial of motion to dismiss for outrageous government conduct). When the government refuses a conditional plea, as here, the defendant must choose between preserving her claims for appeal and receiving the benefits of the plea bargain.

## V

The district court ordered Montilla to pay a mandatory special assessment of $50 pursuant to 18 U.S.C. § 3013(a)(2)(A) (1984). In light of our recent opinion holding that this statute was passed in violation of the origination clause of the Constitution, art. I § 7, we vacate the special assessment. *See United States v. Munoz–Flores,* 863 F.2d 654 (9th Cir.1988). We affirm the remainder of the judgment and sentence.

AFFIRMED in part, VACATED in part.

---

3. The deferral did not adversely affect Montilla's right to appeal. *See* Fed.R.Crim.P. 12(e). She had every opportunity to appeal an adverse ruling post-trial, if she were convicted. Her waiver of this right was purely a matter of choice.