UNITED STATES of America,
Respondent,

v.

Anthony NAVARRO, Movant.

No. CR S–94–390 LKK.

United States District Court,
E.D. California.

July 20, 1997.

**1298**

Nancy Simpson, Assistant U.S. Attorney, Sacramento, CA, for Respondent.

Brenda Grantland, Mill Valley, CA, for Movant.

*ORDER*

KARLTON, Chief Judge Emeritus.

This matter is once again before the court, this time on the government's motion to reconsider the court's order granting the motion made pursuant to 28 U.S.C. § 2255 and dismissing the underlying indictment. The facts relevant to the order are set forth in the court's published opinion and need not be repeated here. *See United States v. Navarro*, 959 F.Supp. 1273 (E.D.Cal.1997).

I begin with a discussion of the standards applicable to a motion to reconsider, and then applying those standards either address or decline to consider the substantive issues which the government now tenders. The government's motion to reconsider raises some difficult and troubling issues, resolution of which is far from certain. While the court will reconsider certain of the questions addressed in the government's motion, upon reconsideration, and for the reasons explained below, the court will not grant the government substantive relief.

**I.**

**MOTIONS TO RECONSIDER**

"Under the 'law of the case' doctrine a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir.1997) (citing *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993)). That is because, while motions to reconsider are directed to the sound discretion of the court, *see*

*Kern–Tulare Water Dist. v. City of Bakersfield,* 634 F.Supp. 656, 665 (E.D.Cal.1986), *aff'd in part and rev'd in part on other grounds,* 828 F.2d 514 (9th Cir.1987), *cert. denied,* 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988), considerations of judicial economy weigh heavily in the process. Accordingly, before reconsideration may be granted there must be a change in the controlling law, facts, or other circumstances, the need to correct a clear error, or the need to prevent manifest injustice. *Alexander,* 106 F.3d at 876 (citing *Thomas,* 983 F.2d at 155). In implementation of the general constraint on motions for reconsideration, Local Rule Crim. 12–430 requires that a party seeking reconsideration of a district court's order must brief the "new or different facts or circumstances [which] were not shown upon such prior motion, or what other grounds exist for the motion." The purpose of the rule is to insure that the standards for reconsideration have been met by the moving party prior to the court's consideration of the merits.

■■■ As with motions to alter or amend a judgment made pursuant to Fed.R.Civ.P. 59(a), motions to reconsider are not vehicles permitting the unsuccessful party to "rehash" arguments previously presented. *See Costello v. United States Government,* 765 F.Supp. 1003, 1009 (C.D.Cal.1991). Nor is a motion to reconsider justified on the basis of new evidence which could have been discovered prior to the court's ruling. *Fay Corp. v. BAT Holdings I, Inc.,* 651 F.Supp. 307, 309 (W.D.Wash.1987), *aff'd,* 896 F.2d 1227 (9th Cir.1990). Finally, "after thoughts" or "shifting of ground" do not constitute an appropriate basis for reconsideration. *Id.* These relatively restrictive standards "reflect[ ] district courts' concern for preserving

dwindling resources and promoting judicial efficiency." *Costello,* 765 F.Supp. at 1009.

## II.

## THE MOTION

■■■ The government asserts three grounds for reconsideration. First, that *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), *reh'g denied,* 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989), precludes the granting of defendant's motion. Second, that the court failed to apply *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), to defendant's motion, and finally, that the court misinterpreted the government's position on the relation between 5 U.S.C. § 3372(a) and 28 U.S.C. § 543. I consider each claim seriatim.[1]

### A. RETROACTIVITY UNDER *TEAGUE v. LANE*

In *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), *reh'g denied,* 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989), a plurality of the High Court held that "new constitutional rules of criminal procedure" cannot be applied retroactively in a habeas proceeding unless either (1) the new rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or (2) its absence would "undermine the fundamental fairness that must underlie a conviction or seriously diminish the likelihood of obtaining an accurate conviction." *Id.* at 311, 315, 109 S.Ct. at 1075, 1078.[2] The government, relying on *Teague,* argues that movant cannot raise on collateral attack the Special Assistant United States Attorney's (SAUSA) lack of authority to represent the United States in the underlying prosecution.

---

1. The court will address the motion despite the government's failure to comply with the local rule's requirement that the moving party address the standards for reconsideration. *See* Local Rule Crim. 12–430(i). Local rules consistent with the federal rules have the force of law, *Professional Programs Group v. Dep't of Commerce,* 29 F.3d 1349, 1353 (9th Cir.1994), and thus the government's failure is justification for denial of the motion. Nonetheless, the question of whether reconsideration is proper appears to be in a posture where it may be resolved by review of the present record, and thus the court proceeds to do so. The court's indulgence in this

matter is not intended, and should not be taken, as carte blanche to follow this course of conduct in the future.

2. The plurality limited the second exception to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Teague v. Lane,* 489 U.S. 288, 313, 109 S.Ct. 1060, 1077, 103 L.Ed.2d 334 (1989), *reh'g denied,* 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989). Justices Stevens and Blackmun concurred in the application of the second exception, but dissented to the extent that the

■ Although *Teague* involved a habeas petition under § 2254, the doctrine applies to § 2255 habeas petitions. *See, e.g., United States v. Judge,* 944 F.2d 523, 524–25 (9th Cir.1991), *cert. denied,* 504 U.S. 927, 112 S.Ct. 1988, 118 L.Ed.2d 585 (1992). Nonetheless, this court concludes that the government's position cannot be sustained.

#### i. WAIVER

■ When the government timely raises *Teague,* its limitation on collateral attack is a threshold matter which must be resolved before addressing the merits. *See Goeke v. Branch,* 514 U.S. 115, 116–18, 115 S.Ct. 1275, 1276, 131 L.Ed.2d 152, 156–57 (1995) (citations omitted). *Teague,* however, does not implicate the jurisdiction of the court and, thus, *Teague* can be waived. *Id.; Caspari v. Bohlen,* 510 U.S. 383, 389, 114 S.Ct. 948, 952–53, 127 L.Ed.2d 236 (1994). As a result, the court "may, but need not, decline to apply *Teague* if the State does not argue it." *Schiro v. Farley,* 510 U.S. 222, 229, 114 S.Ct. 783, 788–89, 127 L.Ed.2d 47 (1994) (citing *Godinez v. Moran,* 509 U.S. 389, 397 n. 8, 113 S.Ct. 2680, 2685 n. 8, 125 L.Ed.2d 321 (1993), *reh'g denied,* 510 U.S. 1215, 114 S.Ct. 1341, 127 L.Ed.2d 688 (1994); *see also Parke v. Raley,* 506 U.S. 20, 26, 113 S.Ct. 517, 521–22, 121 L.Ed.2d 391 (1992); *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718–19, 111 L.Ed.2d 30 (1990) (cited in *Godinez, supra)* In the matter at bar, the government did not raise the retroactivity argument during the court's consideration of the habeas petition. As I now

explain, given the restrictive standards applicable to motions to reconsider, that failure works a waiver of the *Teague* defense.[3]

While the court has discretion to consider a waived *Teague* defense, the standards applicable to a motion for reconsideration articulated above counsel restraint in the entertaining of arguments which the government could have raised earlier, unless the refusal to reconsider would result in clear legal error or manifest injustice. The government has not sought to justify its failure to raise the *Teague* issue earlier, and there is no apparent reason why the government could not have done so.[4] Given that "harsh rules for waiver of constitutional claims" are often applied to defendants, *see Caspari,* 510 U.S. at 396, 114 S.Ct. at 956–57 (Stevens, J. dissenting) (citations omitted), the government cannot claim manifest injustice resulting from the court's decision not to relieve it from its procedural default. In light of the fact that *Teague* may be viewed as waived if not raised, and the Circuit's and Local Rules' relatively strict standards for reconsideration, the government's attempt to invoke a retroactivity argument at this point in the proceeding cannot be countenanced.[5]

#### ii. THE INAPPLICABILITY OF *TEAGUE*

■ Even if the government had not waived its retroactivity defense, it appears that *Teague* would be inapplicable to the matter at bar. By its terms, *Teague* applies to "new constitutional rules of criminal procedure." *Teague,* 489 U.S. at 316, 109 S.Ct. at

---

plurality required "fundamental fairness of procedures" to be linked to factual innocence. *Id.* at 321–22, 109 S.Ct. at 1081–82 (Stevens, J., concurring). Since *Teague,* the Supreme Court has adopted the plurality's articulation of the test. *See Caspari v. Bohlen,* 510 U.S. 383, 396, 114 S.Ct. 948, 956–57, 127 L.Ed.2d 236 (1994) (second exception applies to " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding") (citing *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 1263–64, 108 L.Ed.2d 415 (1990), *reh'g denied,* 495 U.S. 924, 110 S.Ct. 1960, 109 L.Ed.2d 322 (1990)).

3. There is some irony in this ruling. The driving forces on limiting motions to reconsider is the need for finality and the need to conserve judicial resources, considerations which also inform the *Teague* doctrine.

4. At oral argument the government explained that it failed to raise *Teague* initially because it felt its other arguments were dispositive. The restrictive standards applicable to motions for reconsideration were designed to guard the court from successive motions premised on just such strategic decisions.

5. The Supreme Court cases cited in the text for the proposition that *Teague* is waived if not timely raised arose where the government did not raise the defense in the lower courts at all. Here, of course, the government has raised the issue, but only after the court's disposition of the motion on the merits. The standards applicable for motions to reconsider strongly suggest that this court should employ the same analysis for waiver used by the High Court when the government raises the *Teague* defense for the first time on appeal.

1078. The Ninth Circuit has specifically distinguished between the procedural rules governed by *Teague* and "substantive, non-constitutional decisions concerning the reach of a federal statute." *United States v. McClelland*, 941 F.2d 999, 1001 (9th Cir.1991) (new decision adding an essential element to a criminal offense is fully retroactive in a § 2255 proceeding). Decisions which explicate substantive elements of a crime, or which speak to the authority of the court to convict a criminal defendant, do not fall within the scope of the *Teague* doctrine. *Id.* (citing *Davis v. United States*, 417 U.S. 333, 346–47, 94 S.Ct. 2298, 2305–06, 41 L.Ed.2d 109 (1974); *see also United States v. Dashney*, 52 F.3d 298, 299 (10th Cir.1995); *United States v. Barnhardt*, 93 F.3d 706 (10th Cir. 1996). Indeed, ii: is well established that holdings concerning the subject matter jurisdiction of the court in criminal cases must have complete retroactive effect. *United States v. Johnson*, 457 U.S. 537, 550, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202 (1982) (Marshall, J., dissenting) (citations omitted).

 Citing to the Ninth Circuit opinion in *Judge* and various district court cases dealing with § 2255 petitions following upon *Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), the government argues that courts have extended *Teague* to questions of statutory interpretation.[6] In *Gomez*, the High Court held that jury selection by a magistrate without the defendant's consent violates the Federal Magistrates Act, 28 U.S.C. § 636(b)(3). La-

ter in *Judge*, the Ninth Circuit held that *Gomez* did not fall into the *Teague* exception for procedures "implicit in the concept of ordered liberty." *Judge*, 944 F.2d at 525.[7]

Even assuming that *Judge* stands for the proposition that *Teague* applies to a new interpretation of a statute as well as procedural rules developed to implement constitutional provisions, it is inapposite to the matter at bar. Whatever the extent of *Judge*, it does not address the question of constitutional or statutory limits on the court's power to adjudicate. If this were not the rule, then the statutory authority to seek review by way of collateral attack of convictions for want of jurisdiction, *see* 28 U.S.C. § 2255, would be without effect.[8] Whatever power the High Court has to develop rules for implementation of § 2255, they cannot violate the plain terms of a constitutional statute. Accordingly, the court must reject the government's attempt to invoke the retroactivity rule announced in *Teague*. Here, under the court's previous ruling, the application of 5 U.S.C. § 3372 to SAUSA Kitching's appointment goes to the court's subject matter jurisdiction. Accordingly, *Teague* does not apply.

## B. THE EFFECT OF PLEADING GUILTY UNDER *UNITED STATES V. BROCE*

 The government next argues that the defendant waived any jurisdictional claim by pleading guilty to the indictment. This issue, unlike the *Teague* issue, was raised by the government in its response to the peti-

---

6. If the government's reading of *Judge* is correct, it is difficult to rationalize. As movant fairly points out, a court's interpretation of a statute is never new law in the *Teague* sense, because the decision "declares what the statute meant from the day of its enactment, not from the date of the decision." *United States v. McKie*, 73 F.3d 1149, 1151 (D.C.Cir.1996). As the Supreme Court has said "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to the construction." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994).

7. The government's position taken here as to the availability of collateral relief for convictions obtained in violation of a subsequent statutory interpretation appears to be in conflict with its position elsewhere. Thus, the government has repeatedly conceded in this district the retroac-

tivity of *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *See also United States v. Garcia*, 77 F.3d 274 (9th Cir. 1996) (*sua sponte* application of *Bailey* to appeal pending at the time of decision); *United States v. McPhail*, 112 F.3d 197, 199 (5th Cir.1997) (rejecting application of *Teague* to *Bailey* type cases because *Bailey* is a case involving statutory interpretation); *United States v. Barnhardt*, 93 F.3d 706, 709 (10th Cir.1996) (same).

8. The statute provides:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground ... that the court was without jurisdiction to impose such sentence ... may move the court which imposed the sentence to vacate, set aside or correct the sentence."

28 U.S.C. § 2255, ¶ 1.

tion. See Order at 12:2–4 ("First, [the government] argues that by virtue of the plea of guilty, the defendant has waived any claim relating to the legality of the prosecutor's appointment."). Because the court failed to address this issue in its disposition of the motion, the motion to reconsider is proper, and the court must now do so. Although the question is more difficult than the *Teague* issue, for the reasons discussed below, I conclude that the movant is not deprived of an opportunity to raise a jurisdictional challenge by virtue of his previous plea of guilty.

 The general rule, explained in the *Broce* line of cases, is that "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson,* 467 U.S. 504, 508, 104 S.Ct. 2543, 2546–47, 81 L.Ed.2d 437 (1984) (quoted in *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927, § 74 (1989)); *United States v. Cortez,* 973 F.2d 764, 766 (9th Cir.1992); *United States v. Montilla,* 870 F.2d 549, 552 (9th Cir.1989) (citing *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973)), *amended on other grounds,* 907 F.2d 115 (9th Cir.1990). Despite the broad applicability of this principle, it is not all encompassing. Thus, "[a] plea of guilty to a charge does not waive a claim that the charge is one which the government constitutionally may not prosecute," *Cortez,* 973 F.2d at 766 (citations omitted), and a plea may be set aside upon a showing that the court lacked jurisdiction to entertain it. *Marrow v. United States,* 772 F.2d 525, 529 (9th Cir.1985).

The issue at bar, which implicates the jurisdiction of the court, is quite distinct from those tendered by the *Broce* line of cases. The rule generally precluding collateral attack after a plea of guilty rests upon the notion that nothing prevents an adequately represented criminal defendant from admitting to all the factual and legal elements inherent in a charge. *See Broce,* 488 U.S. at 570, 109 S.Ct. at 762–63 ("in entering a plea of guilty, the accused . . . is admitting guilt of

a substantive crime."). The matter at bar, however, tenders a quite different question. Here, the issue is not whether the defendant is guilty, but whether the court had jurisdiction even if he is guilty. If the government's position that a plea of guilty waives a jurisdictional defect is accepted, the effect of the movant's plea was to stipulate to the court's jurisdiction. As I now explain, however, unlike an admission of the facts and concession of the legal issues inherent in a plea of guilty, the parties cannot stipulate to the court's jurisdiction. In sum, because questions going to the jurisdiction of the court are distinct from questions of guilt, the *Broce* line of cases appear inapposite.

 It is fundamental that the lower federal courts are courts of limited jurisdiction which can only entertain those cases which they are empowered to hear by virtue of the Constitution or an act of Congress. Accordingly, as the Supreme Court explained in a civil context, lack of jurisdiction cannot be a waived, nor can jurisdiction be conferred on the court by the consent or stipulation of the parties. *See American Fire and Casualty Co. v. Finn,* 341 U.S. 6, 17–18 & n. 17, 71 S.Ct. 534, 541–42 & n. 17, 95 L.Ed. 702 (1951) (superseded by statute on other grounds). The government has failed to suggest a principled basis for distinguishing between civil and criminal cases in this regard, and none presents itself to this court. *See Menna v. New York,* 423 U.S. 61, 62, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975) ("Where the State is precluded from haling a defendant into court on a charge, federal law requires the conviction on that charge to be set aside even if the conviction was entered pursuant to a counseled plea of guilty.").

The government maintains, however, that the exceptions to the rule that a guilty plea bars subsequent collateral attack have no application here because such motions only lie where the defect is plain on the record and requires the taking of no additional evidence. *See Broce,* 488 U.S. at 576, 109 S.Ct. at 766.[9] Assuming, without deciding, that the *Broce* limitation would apply to chal-

---

9. *Broce* distinguishes cases allowing collateral attack despite a plea of guilty, such as *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) and *Menna v. New York,* 423 U.S. 61, 96 ·S.Ct. 241, 46 L.Ed.2d 195 (1975), from the

general rule on the grounds that in those cases the court was without jurisdiction to entertain the suit at all. *Broce,* 488 U.S. at 575, 109 S.Ct. at 765–66. The High Court also noted, however,

lenges to the court's jurisdiction, it appears that the expanded record factor has no effect on the matter at bar.

This court's underlying decision was based on the conclusion that the attorney purportedly representing the United States was not authorized to do so by virtue of 5 U.S.C. § 3372, which precludes appointment of state employees to a position with the federal government for a period in excess of four years. Clearly, the court could take judicial notice of the fact that Mr. Kitching had been appearing in this court for more than ten years. That, and the fact that he was the prosecutor in the matter at bar, a fact equally susceptible to judicial notice, was all that was required. Since the jurisdictional question could have been "resolved without any need to venture beyond [the] record [at the time the guilty plea was entered]," *Broce*, 488 U.S. at 575, 109 S.Ct. at 765, the court did not have jurisdiction to accept the plea or sentence the movant.

The government argues that an evidentiary hearing was necessary, despite Kitching's name appearing on the indictment, to confirm that he presented the case to the grand jury, since the attorney whose name appears on the indictment is not necessarily the attorney who appeared before the grand jury.[10] The argument will not lie.

*Broce* and its progeny may be read as prohibiting extended evidentiary hearings in support of a motion under § 2255. *But see* n. 9 *supra*. In *Broce*, for example, defendants who pled guilty to two indictments for conspiracy later argued that their convictions violated double jeopardy because they claimed that there was in fact only one conspiracy. *Broce*, 488 U.S. at 567–68, 109 S.Ct. at 761–62. The High Court held that an evidentiary hearing was necessary to establish whether, contrary to the necessary implications of their plea, there was in fact only one conspiracy. *Id.* at 575–76, 109 S.Ct. at 765–66. Similarly, in *Cortez*, the defendant could not demonstrate his plea resulted from selective prosecution without introducing evidence of improper motive and how similarly situated persons were treated. *Cortez*, 973 F.2d at 767. Finally, in *Montilla*, the defendant attempted to assert a due process defense based upon allegations that the government had forced her to enter the drug trade which formed the basis of her conviction for possession. *Montilla*, 870 F.2d at 551. The Circuit determined that the defendant could not prove her allegations without an evidentiary hearing. *Id.* at 553

that "in neither *Blackledge* nor *Menna* did the defendants seek further proceedings at which to expand the record with new evidence. In those cases, the determination that the second indictment could not go forward should have been made by the presiding judge at the time the plea was entered on the basis of the existing record." *Id.* It is thus unclear whether the absence of the ability to make a determination of the right to relief from the record at the time of the plea bars relief, or whether it is merely a factor to be considered by the habeas court. In any event, as I explain in the text, the factual posture at the time of the plea in this case appears to be no different than the factual posture in *Blackledge* and *Menna*. Here, as there, the only reason the ruling was not made at the time of the plea was the defendant's failure to raise the issue, an issue addressed by *Teague*, rather than *Broce*.

10. The government's argument appears to be premised on Judge Shubb's suggestion that given the Congressional grant to district courts of jurisdiction over federal offenses, *see* 18 U.S.C. § 3231, the court has jurisdiction over the prosecution if the indictment was obtained by an authorized assistant even if trial counsel was disqualified. *See United States v. Mendoza*, 957 F.Supp. 1155, 1158 (E.D.Cal.1997). In this court's previous opinion granting movant's motion, I explained that even Judge Shubb's limitation on the applicability of *United States v. Providence Journal* 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988), and its progeny would not save the instant prosecution since Mr. Kitching was acting on his own when the matter went before the grand jury. This court also suggested, however, that a SAUSA must have authority during the entire case. *See* Order at 9:14–19 ("the court understands the cases to hold that on the one hand, where an attorney, acting essentially without supervision who is not authorized to represent the United States presents the case to the grand jury, or perhaps otherwise conducts all of the proceedings, a jurisdiction defect is tendered and the proceedings are a nullity"); *and see United States v. Durham*, 941 F.2d 886, 891 (9th Cir.1991) (Ninth Circuit entertains challenge to SAUSA's authorization to present government's case either at the grand jury or at the trial); *United States v. Plesinski*, 912 F.2d 1033 (9th Cir.1990) (treating SAUSA's appearances in court, in addition to his presence before the grand jury, as jurisdictional questions), *cert. denied*, 499 U.S. 919, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991). I further consider this matter *infra* while addressing the government's substantive argument.

The case at bar presents a situation very different from those cases which found that the need for an evidentiary hearing barred relief. The question of whether Mr. Kitching was the attorney who presented the matter to the grand jury hardly suggests the need for the kind of extended evidentiary hearings that *Broce* was addressing. That fact can be gleaned from the magistrate judge's court minutes, and is, in any event, a fact that government counsel, as officers of the court, are bound to reveal upon the court's inquiry. Unlike *Broce, Cortez,* and *Montilla,* neither extended, nor any, evidentiary hearing whatsoever, was required to determine that Kitching appeared alone before the grand jury. Rather, this case is like *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (prosecutorial vindictiveness in obtaining plea after defendant appeals conviction), and *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam) (guilty plea set aside based on double jeopardy claim), where essentially undisputed facts underlie the claim.

The government argues, citing *Marrow v. United States,* 772 F.2d 525, 529 (9th Cir. 1985), that the Ninth Circuit has only applied the jurisdictional exception to cases involving prosecutorial vindictiveness and double jeopardy. *Marrow,* however, merely cites the two Supreme Court cases which have established a defendant's right to set aside a plea. *See Blackledge,* 417 U.S. at 29–31, 94 S.Ct. at 2103–04; *Menna,* 423 U.S. at 62, 96 S.Ct. at 242. Neither *Marrow,* nor any other authority cited to or found by the court forecloses the application of the jurisdictional exception to guilty pleas obtained by SAUSAs without authority to prosecute a case. Given that the issue at bar goes to the power of the court to entertain the underlying litigation, no reason suggests itself to limit the challenge as argued by the government.

11. Indeed, at oral argument one of the government's counsel seemed to be suggesting that the Supreme Court and Ninth Circuit's characterization of the problem of unauthorized representation as jurisdictional was the result of loose usage. The court cannot adopt that argument. Boldness, perhaps a proper characterization of this court's underlying order, is not the same as presumption.

12. The Constitution provides:

## C. JURISDICTION

### i. CASE AND CONTROVERSY

Underlying all of the government's arguments is its assertion that the issue at bar does not address the court's jurisdiction.[11] That same sort of concern evidently informed Judge Shubb's limitation on *Providence Journal.* The hesitancy is hardly unreasonable given the Supreme Court's failure to explain why the defect at issue there was jurisdictional. Although it is hardly this court's duty to justify the holdings of the High Court, it may be that some explanation may help elucidate the difficult issues under review.

As noted above, federal courts are courts of limited jurisdiction. Under the Constitution, two limitations on a federal court's jurisdiction are implicated by the issues at bar. First, whether there is a real case or controversy between the parties before the court when the attorney purporting to represent the United States cannot do so as a matter of law, and second, whether under those circumstances the United States is a party. *See* U.S. Const. art. III.[12] Both issues are in reality different aspects of the same question.

■ For a case or controversy within the meaning of Article III to exist, the plaintiff must have been adversely affected by the conduct forming the basis of the complaint. Where the party bringing suit was not adversely effected by the conduct, that party lacks standing because there is no case or controversy as between the parties before the court, and where there is no case or controversy the court lacks jurisdiction to resolve the litigation. *Whitmore v. Arkansas,* 495 U.S. 149, 155–56, 110 S.Ct. 1717, 1722–24, 109 L.Ed.2d 135 (1990).[13]

"The judicial power shall extend to all cases, in law and equity arising under this Constitution, the laws of the United States ... [and] to controversies to which the United States shall be a party."

U.S. Const. art. III, § 2.

13. Thus, for instance, a defendant in a criminal action cannot raise violations of another person's Fourth Amendment rights, however egregious the government agents' conduct. *United States v. Salvucci,* 448 U.S. 83, 95, 100 S.Ct. 2547, 2554–

■■■■■ Since a federal offense is defined as "an offense against the United States," *see* 18 U.S.C. § 2, and the United States is the named plaintiff in a criminal prosecution, it seems self-evident that only the United States has standing to pursue an affront to its criminal laws. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (explaining that the plaintiff must have suffered a cognizable injury in fact for there to be standing); *accord Railway Labor Executives Ass'n v. Dole*, 760 F.2d 1021, 1024 (9th Cir. 1985) (explaining that private attorneys have no standing to force a prosecutor to act when the prosecutor is designated by Congress to prosecute a civil penalty provision in a statute). It is also self-evident that only those authorized by law to represent the United States may do so. *See* 28 U.S.C. § 516;[14] *United States v. Providence Journal Co.*, 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988). It thus follows that where the prosecutor is not authorized to represent the United States, the government has not appeared, and since only the government may bring a criminal suit asserting violation of federal law, the case brought must be dismissed for lack of a party having a case or controversy with the defendant, i.e. the court is without jurisdiction. For the same reason, it follows that when an unauthorized attorney purports to represent the United States, the United States is not a party within the meaning of Article III, and thus, once again, the court is without jurisdiction.

55, 65 L.Ed.2d 619 (1980). Although the introduction of the evidence in the defendant's trial may cause him great injury, he was not the victim of the constitutional violation and thus lacks standing to raise that issue.

**14.** The statute provides:

"Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."

28 U.S.C. § 516.

**15.** 5 U.S.C. § 3372(a)(2) provides in pertinent part:

This court's previous decision turned on whether Mr. Kitching was authorized to represent the United States in the underlying criminal case. Because I concluded that he was not so authorized, I concluded, in effect, that the government was not a party and had not appeared, and, for the reasons explained above, the court lacked jurisdiction.

## ii. THE ELEMENTS OF THE STATUTE

The above conclusion rests upon this court's determination that by virtue of the time limitations found at 5 U.S.C. § 3372, Mr. Kitching was without authority to represent the United States. In this motion to reconsider, the government once again argues that the limitations in 5 U.S.C. § 3372 do not apply because Kitching was appointed pursuant to 28 U.S.C. § 543.[15]

As a preliminary matter, the court notes that the argument has already been made by the government and rejected by the court. *See* Order at 12:13–14:8. Even if reconsideration of the matter were proper, however, the court would again reject the government's reading of § 3372(a)(2) and § 543.

The government makes two arguments. First, the government notes that § 3372 applies only to assignments "under this subchapter." Second, the government argues that the legislative history reveals that § 3372 applies only to appointments for the purposes of design, execution and management of systems of personnel administration and training programs. These arguments are not well taken.

"(a) On request from or with the concurrence of a State or local government, and with the consent of the employee concerned, the head of a Federal agency may arrange for the assignment of—
(2) an employee of a State or local government to his agency; for work of mutual concern to his agency and the State or local government that he determines will be beneficial to both. The period of an assignment under this subchapter may not exceed two years. However, the head of a Federal agency may extend the period of assignment for not more than two additional years. * * * * "
5 U.S.C. § 3372(a)(2).
Section 543(a) provides: "The Attorney General may appoint attorneys to assist United States attorneys when the public interest so requires."
28 U.S.C. § 543(a).

By its terms, § 3372(a)(2) applies to appointments of "an employee of a ... local government to [a Federal] agency" when the appointment is arranged by "the head of a Federal agency." 5 U.S.C. § 3372(a). The Attorney General is the head of a Federal Agency—the Department of Justice. Kitching is the employee of a local government. Thus, the Attorney General appointed Kitching pursuant to § 3372(a)—i.e. the appointment was "under this subchapter."

The fact that 28 U.S.C. § 543 authorizes the Attorney General to appoint attorneys to assist United States Attorneys does not mean that Kitching was not also appointed pursuant to the provisions of § 3372(a). On the contrary, where the necessary consents have been obtained, a deputy district attorney, whose employment thus fulfills the local government employee element of the statute, is appointed as a Special Assistant United States Attorney, thus fulfilling the federal agency element of the statute, for the purpose of prosecuting crimes violating the law of both sovereigns, thus fulfilling the "work of mutual concern" element. Accordingly, every requisite for the application of § 3372(a) has been met. Moreover, put bluntly there is simply nothing in § 543 which would contraindicate application of § 3372(a). As I noted in the original order and reiterate here, the rule of construction is that where two statutes "are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1018, 104 S.Ct. 2862, 2881, 81 L.Ed.2d 815 (1984) (citations and internal quotations omitted). Nothing the government has argued suggests that the rule is inapplicable to the matter at bar.

■ Turning to the government's legislative history argument, whatever the two paragraphs of legislative history cited by the

government may stand for, under accepted cannons of statutory construction they cannot alter the plain meaning of the statute. *See Darby v. Cisneros*, 509 U.S. 137, 147, 113 S.Ct. 2539, 2545, 125 L.Ed.2d 113 (1993) (recourse to legislative history unnecessary when statute's text is plain); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 1149-50, 117 L.Ed.2d 391 (1992) ("when the words of a statute are unambiguous, then, ... judicial inquiry is complete.") (citations and internal quotations omitted).

### iii. THE ROLE OF THE U.S. ATTORNEY

■ At oral argument on the motion to reconsider, the government raised yet another issue. It suggested that since the prosecution was authorized by the United States Attorney, and his name appears as one of the attorneys on all the pleadings, the fact that Mr. Kitching actually prosecuted the case is not fatal.[16] This argument is not without persuasive force.

■ As the United States now contends, "[r]esponsibility for prosecution ... is that of the United States Attorney in his district; other attorneys are only his assistants...." *United States v. Arnpriester*, 37 F.3d 466, 467 (9th Cir.1994); *See also In re Persico*, 522 F.2d 41, 56 (2d Cir.1975), ("where ... the United States Attorney reviews and signs all indictments and organized crime prosecutions are coordinated with his work, the attorneys of the Strike Force are 'assisting' the United States Attorney."). Thus, the government contends that although Mr. Kitching may have been unauthorized, formally the prosecution was brought in the name of the United States Attorney, clearly an attorney authorized to do so.

Moreover, the formal participation of the United States Attorney in the case at bar raises yet another argument. Because of that participation the instant matter is distinguished from *United States v. Providence*.[17]

---

**16.** This issue appears not to have been previously briefed by the government, and arguably is subject to the rule prohibiting the use of a motion to reconsider to shift the grounds for previously made arguments. I will nonetheless address it because it may be viewed as closely connected with arguments concerning supervision that the government did advance in connection with the

hearing on the motion. In any event, as the government notes, it had observed in its original brief that the indictment was captioned in the name of the United States Attorney and signed by him.

**17.** While the argument considered in the text has not been advanced by the United States, it ap-

There, the Solicitor General, i.e. the attorney authorized to represent the United States before the Supreme Court, had refused to authorize the filing of the petition ultimately dismissed for want of jurisdiction. Here, to the contrary, the attorney authorized to represent the United States had authorized the litigation. If, as the court has suggested above, the significance for jurisdictional purposes is whether the attorney who purports to represent the United States has authority to do so, this case falls somewhere between cases like *Providence Journal*, where the attorney was in fact without authorization, and the ordinary criminal prosecution where the assistant appearing is properly appointed.

The distinction explicated above is real and thus subject to serious consideration. It has given the court pause; nonetheless, for the reasons explained below, but with less than full confidence, the court will adhere to its previous decision.

Two reasons inform the court's decision to adhere to the previous determination. First, the fair implication of the Ninth Circuit's previous decisions; and, second, the requirement that for standing and thus jurisdiction to exist the United States must be a party to the litigation. I turn to the first reason.

Although Congress has provided for the appointment of attorneys to assist the United States Attorney in the discharge of his duties, 28 U.S.C. § 543, only the United States Attorney is authorized to prosecute criminal cases. *See* 28 U.S.C. § 547(1).[18] Since the prosecution must be in the name of the United States Attorney, his name appears on the documents pertaining to the prosecution. This is what occurred in the matter at bar. Presumably, however, that was also true in all of the Ninth Circuit cases considering whether a SAUSA was authorized to represent the government. Moreover, since the manual for United States Attorneys requires his approval of prosecutions, it can likewise be assumed that this was also the case in all the Ninth Circuit

cases. Nonetheless, neither authorization nor written appearance by the United States Attorney in those cases was apparently perceived to be of any consequence to their disposition. Rather, the court inquired as to whether the SAUSA appeared alone before the grand jury and the degree of supervision that the SAUSA received while litigating the cases. *See United States v. Durham*, 941 F.2d 886, 892 (9th Cir.1991); *United States v. Plesinski*, 912 F.2d 1033, 1038–39 (9th Cir. 1990); *cert. denied*, 499 U.S. 919, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991). Obviously, such considerations would be unnecessary if the authorization of the prosecution by the United States Attorney, or the formalized appearance of the United States Attorney, satisfied the requirement that the prosecuting attorney actually appearing be an authorized representative of the United States.

Given the fact that no Ninth Circuit case has discussed the formal participation of the United States Attorney it is not clear that the previous cases are dispositive. *See Webster v. Fall*, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925) ("[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided by the court as to constitute precedent."). Nonetheless, just as this court is obligated to give respectful attention to the dicta of the Ninth Circuit, I am obligated to give respectful attention to the necessary implications of that court's decisions. If the Circuit wishes to distance itself from those implications it is free to do so. Whether this court should, seems to me to present quite a different issue.

■ A second consideration also bears on resolution of the issue. The requisite that standing exist is generally applied with great vigor. The absence of an authorized attorney pursuing the litigation suggests the United States is not a party to the litigation and thus standing is wanting. It is true that unlike *Providence Journal*, the United States

pears to the court to necessarily follow from the argument that was advanced. Thus, the court believes that it is appropriate to consider the argument here.

**18.** The statue provides:

"Except as otherwise provided by law each United States Attorney, within his district, shall—
(1) prosecute for all offenses against the United States; ..."
28 U.S.C. § 547.

Attorney authorized the seeking of an indictment here. Put another way, the United States Attorney may authorize the litigation, but he cannot authorize the pursuit of that litigation by an attorney barred by an Act of Congress.

In sum, the attorney obtaining that indictment was barred by law from representing the United States, and although the prosecution was captioned *United States v. Navarro*, and although a representative of the United States having the authority to do so had authorized the seeking of the indictment, quite literally the United States had neither sought nor obtained the indictment. For the same reason, the disposition of the litigation by plea was negotiated by an attorney without authority to determine that the interests of the United States had been satisfied by the plea bargain. One can presume that the special prosecutor involved in the litigation underlying *Providence Journal* was authorized to initially bring the litigation. What the case seems to require is more, not only must the litigation be authorized, but the attorney representing the government must also be authorized to pursue whatever proceeding is in issue. In the matter at bar, such was not the case.[19]

The necessary implication of the previous circuit cases *is* that neither the United States Attorney's approval of the bringing of the litigation, nor his formal association with the litigation is dispositive. Moreover, when the attorney obtaining an indictment and pursuing the litigation is not authorized to represent the government, the United States has not appeared and thus Article III standing does not exist. For those reasons, I conclude that the dispositive issue is whether the attorney actually appearing is authorized. For the reasons indicated heretofore, it appears that Mr. Kitching was not and could not be authorized under the law to prosecute the case.

19. It is, of course, easy to deprecate the issue here as a technical deficiency. In this court's view, it is nothing of the sort. Congress by law has limited the term of special assistants. While it can be said that those limitations were established to benefit the government, and that the defendant should have no right to raise a violation of the statute, that argument misses the point. Because only those authorized by Congress have the power to represent the United

## III.

## ORDER

For all the above reasons, the government's motion for reconsideration is DENIED. Nonetheless, the far reaching consequences and the novelty of the issues resolved are sufficient to STAY the order granting the vacation of the criminal judgment and the dismissal of the underlying indictment pending review by the Court of Appeals.

IT IS SO ORDERED.

States, the issue goes to the presence of the United States as a party, and thus to this court's jurisdiction. The court, of course, has an ongoing obligation to ascertain its jurisdiction, whether raised by a party or not. *See, e.g., Washington Local v. International Brotherhood of Boilermakers*, 621 F.2d 1032, 1033 (9th Cir.1980). Finally, such an argument begs a most urgent question— If the United States Attorney does not obey the law, who should?