**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

v.

OSCAR JESUS CHAVEZ-DIAZ,
    *Defendant-Appellant.*

No. 18-50391

D.C. No.
3:18-mj-20098-
KSC-AJB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted December 9, 2019
Pasadena, California

Filed February 5, 2020

Before: Carlos T. Bea, Daniel P. Collins,
and Daniel A. Bress, Circuit Judges.

Opinion by Judge Bress

# SUMMARY[*]

### Criminal Law

The panel reversed a district judge's holding regarding appellate waiver, and remanded, in a case in which a criminal defendant—who pleaded guilty before a magistrate judge to one count of illegal entry into the United States—attempted to raise on appeal to the district judge due process and equal protection challenges to the handling of his prosecution in the Southern District of California.

The panel held that the defendant waived his right to appeal his equal protection and due process claims by entering an unconditional guilty plea, and that the district court's conclusion otherwise rested on a misinterpretation of *Class v. United States*, 138 S. Ct. 798 (2018). The panel held that the *Menna-Blackledge* exception—which allows for constitutionally-based appeals, despite an unconditional guilty plea, where the appeal, if successful, would mean that the government cannot prosecute the defendant at all—does not apply here. The panel explained that nothing in *Class* undermines the general rule that a valid unconditional guilty plea prevents a defendant from raising on appeal claims of antecedent constitutional violations, which is true regardless of whether the challenge on appeal contradicts "factual guilt."

The panel rejected the defendant's argument that if his appeal is held to be waived, his guilty plea was not knowing or voluntary because his counsel stated at the plea colloquy

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that the defendant "is not waiving his appellate rights." The panel explained that the defendant's counsel's statement, which was made in the context of a group colloquy in which defendants were each separately stating whether they were accepting the government's plea offer, necessarily pertained only to those rights that could be preserved despite pleading guilty unconditionally.

The panel remanded with instructions to dismiss the appeal.

## COUNSEL

Kara Hartzler (argued), Federal Defenders of San Diego, San Diego, California, for Defendant-Appellant.

Benjamin Holley (argued) and Daniel E. Zipp, Assistant United States Attorneys; Helen H. Hong, Chief, Appellate Division; Robert S. Brewer, Jr., United States Attorney; United States Attorney's Office, San Diego, California, for Plaintiff-Appellee.

## OPINION

BRESS, Circuit Judge:

Oscar Chavez-Diaz pleaded guilty before a magistrate judge to one count of illegal entry into the United States, but then attempted to raise on appeal to the district judge certain due process and equal protection challenges to the handling of his prosecution in the Southern District of California. These constitutional challenges center on various practices employed in the Southern District to accommodate a recent

surge in illegal entry prosecutions.  Because Chavez-Diaz did not enter a conditional plea expressly preserving his right to appeal particular issues, the threshold question in this case is whether Chavez-Diaz's unconditional guilty plea waived his ability to raise the constitutional claims that he now advances.  We hold that Chavez-Diaz waived his right to appeal these claims, and that the district court's conclusion otherwise rested on a misinterpretation of *Class v. United States*, 138 S. Ct. 798 (2018).  We therefore reverse and remand with instructions to dismiss the appeal.

I

Chavez-Diaz, a Mexican citizen, illegally entered the United States on July 10, 2018.  He was charged with misdemeanor illegal entry in violation of 8 U.S.C. § 1325(a)(2), which is punishable by up to six months in prison.  In light of the Department of Justice's increased prosecution of illegal entry offenses and the Department's offer of time-served sentences to many of those charged with simple misdemeanor illegal entry, the Southern District of California—which bears a disproportionate share of these prosecutions—instituted a separate court calendar and set of procedures for illegal entry cases.  At the time of Chavez-Diaz's prosecution, these procedures were as follows. Typically on the next court day after their apprehension, § 1325 defendants were given the opportunity to meet with a court-appointed lawyer, have an initial appearance before a magistrate judge, and plead guilty pursuant to a plea agreement in which the government agreed to recommend a time-served sentence (an option afforded to most defendants).  This would all happen in the same day, and the defendant would subsequently be removed from the United

States.[1]  Defendants who did not plead guilty had their cases assigned to a district judge or magistrate judge for trial.

Chavez-Diaz appeared before a magistrate judge the day after Border Patrol detained him.  The hearing involved numerous § 1325 defendants appearing together, a practice we have previously approved.  *See United States v. Diaz-Ramirez*, 646 F.3d 653, 656–58 (9th Cir. 2011).  At the hearing, Chavez-Diaz's attorney objected that "this entire system violates equal protection and due process."  This was in specific reference to the Southern District's separate calendaring of § 1325 offenses, which Chavez-Diaz claimed reflected an improper classification based on alienage and ethnicity.  Chavez-Diaz's counsel also objected to other practices in the Southern District relating to § 1325 defendants, specifically, that such defendants were shackled during proceedings, met with their attorneys in a converted garage while shackled in the presence of U.S. Marshals, and allegedly suffered delays in presentment before a magistrate judge due to their detention at Border Patrol stations.  The magistrate judge overruled these various objections.

Chavez-Diaz then informed the magistrate judge that he wished to plead guilty.  At the hearing, the government stated that it was offering all defendants except one a plea agreement by which each defendant waived his right to challenge or appeal his sentence or conviction (except for ineffective assistance of counsel), in return for the government recommending a time-served sentence. Chavez-Diaz pleaded guilty without accepting the plea agreement, and his counsel informed the magistrate judge

---

[1] The Southern District has since changed its practices and § 1325 defendants must now wait four days after their initial appearances before pleading guilty.

that "Mr. Chavez-Diaz is not waiving his appellate rights. He is not." After conducting a standard plea colloquy, the magistrate judge found that Chavez-Diaz entered his plea knowingly and voluntarily. The government recommended a 15-day sentence; Chavez-Diaz argued for time served. The magistrate judge sentenced Chavez-Diaz to time served, which amounted to one night in custody.

Chavez-Diaz appealed under 18 U.S.C. § 3402, which allows appeals to the district court upon conviction by a magistrate judge. The basis for Chavez-Diaz's appeal was the due process and equal protection challenges that the magistrate judge had rejected. The district court held that Chavez-Diaz "did not waive his constitutional challenge by his plea under *Class v. United States*, 138 S. Ct. 798 (2018), as he is not challenging his factual guilt but only the constitutionality of the proceedings." The district court then rejected Chavez-Diaz's constitutional arguments on the merits, holding, *inter alia*, that § 1325 defendants were not classified based upon their alienage but rather upon the charges against them, and that the Southern District's calendaring system was a rational response to the flood of § 1325 prosecutions. Chavez-Diaz appealed to this Court. In response, the government renewed its argument that Chavez-Diaz waived his right to appeal these issues as a result of his guilty plea.

## II

### A

The starting point for our analysis is the difference between conditional and unconditional guilty pleas. Under Federal Rule of Criminal Procedure 11(a)(2), "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty . . . reserving in writing the

right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea." A defendant has no entitlement to a conditional guilty plea. As we have held, "[t]he language of Rule 11(a)(2) is entirely permissive and creates no enforceable right to enter a conditional plea," requiring instead the consent of both the government and the court. *In re Gallaher*, 548 F.3d 713, 716 (9th Cir. 2008) (quotations and alterations omitted). But when a defendant does plead guilty conditionally, the scope of the issues that may be appealed is relatively straightforward: it depends on what is stated in the plea agreement or other writing memorializing the conditional plea. *See, e.g.*, *United States v. Arzate-Nunez*, 18 F.3d 730, 737 (9th Cir. 1994); *United States v. Echegoyen*, 799 F.2d 1271, 1275–76 (9th Cir. 1986).

As often happens, Chavez-Diaz pleaded guilty unconditionally, *e.g.*, without a written plea agreement preserving identified issues for appeal. In that situation, and subject to a notable exception that we discuss below, a defendant's ability to raise issues on appeal is severely constrained. As the Supreme Court held long ago,

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea
> . . . .

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). As we have thus held, "it is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects." *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005); *see also United States v. Brizan*, 709 F.3d 864, 866–67 (9th Cir. 2013); *United States v. Jackson*, 697 F.3d 1141, 1144 (9th Cir. 2012); *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (per curiam).

This principle of law inheres in the nature and function of the guilty plea itself, which "represents a break in the chain of events which has preceded it in the criminal process." *Tollett*, 411 U.S. at 267. By pleading guilty, a defendant "'foregoes not only a fair trial, but also other accompanying constitutional guarantees.'" *Class*, 138 S. Ct. at 805 (quoting *United States v. Ruiz*, 536 U.S. 622, 628–29 (2002)). Allowing a defendant to plead guilty unconditionally, but nevertheless to raise on appeal the very constitutional challenges that a guilty plea is designed to relinquish, would give the defendant the benefits of a guilty plea without the attendant waiver of rights that a plea necessarily entails. That is why the Supreme Court has explained that a valid guilty plea "renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." *Id.* at 805.

Consistent with the foregoing, we have routinely held that defendants who pleaded guilty unconditionally cannot raise on appeal various claims of antecedent legal error. *See, e.g.*, *Brizan*, 709 F.3d at 866 (alleged deprivation of ability to raise Fifth Amendment self-incrimination defense); *Jackson*, 697 F.3d at 1144 (alleged Speedy Trial Act

violation); *Lopez-Armenta*, 400 F.3d at 1175 (alleged Fourth Amendment violation and subsequent denial of motion to suppress); *Bohn*, 956 F.2d at 209 (alleged Speedy Trial Act and right to counsel violations).

A defendant who pleads guilty unconditionally and then purports to raise on appeal a challenge cast in equal protection or due process terms meets the same result: "As a general rule, a guilty plea erases claims of constitutional violation arising before the plea." *United States v. Montilla*, 870 F.2d 549, 552 (9th Cir. 1989), *amended* 907 F.2d 115 (9th Cir. 1990). In *Montilla*, we held that a defendant who pleaded guilty waived a due process claim based on alleged "outrageous government conduct" by undercover agents. *Id.* at 551–53. In *United States v. O'Donnell*, 539 F.2d 1233, 1236–37 (9th Cir. 1976), *superseded by statute on other grounds as recognized in United States v. Smith*, 60 F.3d 595, 598 (9th Cir. 1995), we held that a defendant waived his due process challenge to a delay in prosecution by pleading guilty. And in *Tollett*, one of the Supreme Court's landmark precedents in this area, the Court held that a defendant who pleaded guilty could not later raise an equal protection challenge to "the systematic exclusion of" African Americans as grand jurors. 411 U.S. at 259.

Under these cases, Chavez-Diaz through his guilty plea plainly waived his right to appeal his equal protection and due process claims. As explained above, Chavez-Diaz argues that the Southern District's separate § 1325 calendar impermissibly classifies defendants based on alienage and creates a "'separate but equal' system . . . in our federal courthouses." Appellant's Opening Br. at 1. Chavez-Diaz also argues that the circumstances of his meeting with his attorney, his shackling, and delays in presentment to a magistrate judge violated due process. These alleged

constitutional violations "ar[ose] before" Chavez-Diaz entered his guilty plea, *Montilla*, 870 F.2d at 552, and Chavez-Diaz does not argue they rendered his plea unknowing or involuntary. Accordingly, these are challenges to "the constitutionality of case-related government conduct that takes place before the plea is entered." *Class*, 138 S. Ct. at 805. Chavez-Diaz waived his ability to raise these claims by pleading guilty.**[2]**

## B

Citing the Supreme Court's decision in *Class*, 138 S. Ct. 798, the district court held that Chavez-Diaz had not waived his right to bring his equal protection and due process challenges on appeal. We understand the district court to have relied upon the so-called *Menna-Blackledge* exception, *see Menna v. New York*, 423 U.S. 61 (1975) (per curiam); *Blackledge v. Perry*, 417 U.S. 21 (1974), on which *Class* is the Supreme Court's latest word. We hold, however, that the *Menna-Blackledge* exception does not apply here, and that the district court's interpretation of *Class* was mistaken.

The *Menna-Blackledge* exception allows for constitutionally-based appeals—despite an unconditional guilty plea—where the appeal, if successful, would mean that the government cannot prosecute the defendant *at all*. *See Class*, 138 S. Ct. at 803 (explaining that the *Menna-Blackledge* exception "implicates 'the very power of the

---

**[2]** This does not mean that the claims Chavez-Diaz seeks to assert are never susceptible to our review. Chavez-Diaz could have attempted to secure a conditional plea that allowed him to appeal these claims. There may be other mechanisms, including civil litigation, through which these claims could have been preserved and presented. What Chavez-Diaz could not do is plead guilty unconditionally and then try to raise claims that his guilty plea forecloses.

State' to prosecute the defendant") (quoting *Blackledge*, 417 U.S. at 30). These are what we have sometimes referred to as "jurisdictional claims," in that they "challenge the right of the state to hale the defendant into court." *Montilla*, 870 F.2d at 552. The *Menna-Blackledge* exception therefore applies "where on the face of the record the court had no power to enter the conviction or impose the sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989); *see also Montilla*, 870 F.2d at 552 (*Menna-Blackledge* applies where "the judge could determine at the time of accepting the plea, from the face of the indictment or from the record, that the government lacked the power to bring the indictment").

Thus, in *Menna*, the Supreme Court held that a defendant did not waive a double jeopardy challenge because such a claim, if successful, "precluded the State from haling [the defendant] into court on the charge to which he had pleaded guilty." 423 U.S. at 62; *see also id.* at 63 n.2 ("[A] plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute."). Similarly, in *Blackledge*, the Supreme Court held that a guilty plea did not waive the right to challenge a conviction on grounds of vindictive prosecution, because such a claim protects the right "not to be haled into court *at all*." 417 U.S. at 30 (emphasis added); *see also Broce*, 488 U.S. at 575 ("In *Blackledge*, the concessions implicit in the defendant's guilty plea were simply irrelevant, because the constitutional infirmity in the proceedings lay in the State's power to bring any indictment at all.").

Recently, the Supreme Court applied *Menna-Blackledge* in the context of a challenge to the constitutionality of a statute of conviction. In *Class*, the defendant pleaded guilty to a firearms offense under 40 U.S.C. § 5104(e)(1), and

entered a written plea agreement that did not expressly preserve his ability to appeal whether that statute was unconstitutional because it allegedly violated the Second Amendment and was unconstitutionally vague. 138 S. Ct. at 802. Class nevertheless tried to appeal on those grounds, and the question before the Court was whether he had the ability to do so notwithstanding his guilty plea. *Id.* at 801–02. The Supreme Court held that Class' claims fell within the *Menna-Blackledge* exception because "[t]hey challenge the Government's power to criminalize Class' (admitted) conduct," and "thereby call into question the Government's power to constitutionally prosecute him." *Id.* at 805 (quotations omitted).

As the foregoing description of *Menna*, *Blackledge*, and *Class* demonstrates, Chavez-Diaz's claims do not fall within the narrow *Menna-Blackledge* exception. None of those claims "would extinguish the government's power to constitutionally prosecute the defendant if the claim[s] were successful." *Class*, 138 S. Ct. at 806. Unlike the defendant in *Class*, Chavez-Diaz does not argue that Congress lacked the power to criminalize illegal entry into the United States or that the government could not prosecute him for such a violation. Indeed, Chavez-Diaz concedes that Congress has "broad plenary power to draft laws (such as § 1325)," and he does not "challenge the executive's right to exercise prosecutorial discretion in a manner it sees fit." Appellant's Opening Br. 39–40. At oral argument, moreover, Chavez-Diaz conceded, as he understandably must, that if his claims were successful, the government could still retry him. That inevitable concession necessarily removes Chavez-Diaz from the limited ambit of the *Menna-Blackledge* exception, because his challenges do not "amount[] to a claim that 'the State may not convict' him." *Class*, 138 S. Ct. at 804 (quoting *Menna*, 423 U.S. at 63 n.2).

The district court held otherwise on the theory that Chavez-Diaz "is not challenging his factual guilt but only the constitutionality of the proceedings." That is not a correct interpretation of *Class* or the *Menna-Blackledge* exception. It is true that *Class* reiterated that "a valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.'" 138 S. Ct. at 805 (quoting *Broce*, 488 U.S. at 573–74). Such a claim raised on appeal—which in the district court's typology challenges "factual guilt"—necessarily fails to meet the *Menna-Blackledge* exception. *See id.*; *Broce*, 488 U.S. at 570–71, 574–75.

But the converse is not true: that simply because a claim on appeal *does not* challenge factual guilt (or contradict it), that the claim necessarily qualifies for the *Menna-Blackledge* exception. Nothing in *Class* undermines the more general rule, which *Class* reiterated, that "[a] valid guilty plea also renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." *Class*, 138 S. Ct. at 805. That is true regardless of whether the challenge on appeal contradicts "factual guilt" or not. *See id.* A Fourth Amendment claim, for example, is a constitutional challenge that often "has no bearing on guilt." *Linkletter v. Walker*, 381 U.S. 618, 638 (1965). The same is true of claims of allegedly unconstitutional delays in prosecution, *see O'Donnell*, 539 F.2d at 1236–37, or impermissible racial discrimination in the grand jury selection process, *see Tollett*, 411 U.S. at 259. But none of these claims can be raised on appeal following an unconditional guilty plea. *See Class*, 138 S. Ct. at 805–06; *Tollett*, 411 U.S. at 259; *Lopez-Armenta*, 400 F.3d at 1175; *O'Donnell*, 539 F.2d at 1236–37. In other words, in the face of an unconditional guilty plea, that a

claim on appeal challenges or contradicts the defendant's "factual guilt" is sufficient to find waiver. *See Class*, 138 S. Ct. at 805; *Broce*, 488 U.S. at 575–76. But the absence of a challenge to "factual guilt" does not mean the *Menna-Blackledge* exception thereby applies.

This is apparent from *Class*' own discussion of why the *Menna-Blackledge* exception applied to Class. After concluding that Class' constitutional challenge to his statute of conviction met the exception, *see* 138 S. Ct. at 803–05, *Class* then proceeded to address various reasons why the exception might not apply, one of which is if the challenge "in any way den[ies] that [Class] engaged in the conduct to which he admitted." *Id.* at 805–06. The Court held that Class' challenges did not contradict the admissions made in his guilty plea, and so this was not a reason to deny application of *Menna-Blackledge* to Class. *Id.* But as the Supreme Court's own analysis confirmed, that did not then mean the *Menna-Blackledge* exception automatically applied. Such a holding would have obviated the need for the Supreme Court's extensive discussion of why Class' particular challenge affirmatively met the exception. *See id.* at 803–06.

These same points show the error in the district court's determination that Chavez-Diaz could proceed with an appeal because he was challenging "only the constitutionality of the proceedings." To the extent the district court meant to suggest that Chavez-Diaz is challenging the government's power to prosecute him at all—and that he thereby falls within the limited confines of the *Menna-Blackledge* exception—this fails for the reasons explained above. And to the extent the district court meant that Chavez-Diaz may appeal because he raises constitutional challenges independent of his factual guilt,

this too fails. Once again, as described above, various types of challenges fall outside the *Menna-Blackledge* exception, including those of a constitutional nature. *See Class*, 138 S. Ct. at 805 ("[A] guilty plea does implicitly waive some claims, including some constitutional claims."). The necessary reason is that many constitutional claims, which challenge the constitutionality of the proceedings in a broad sense, nonetheless do not "implicate[] the very power of the State to prosecute the defendant." *Id.* at 803 (quotations omitted). Under Supreme Court precedent, that is the proper demarcation of the *Menna-Blackledge* exception to the general rule that a defendant who has entered a valid unconditional guilty plea cannot raise on appeal claims for antecedent constitutional violations.

## C

Chavez-Diaz argues finally that if his appeal is held to be waived, his guilty plea was not knowing or voluntary because his counsel stated at the plea colloquy that "Mr. Chavez-Diaz is not waiving his appellate rights. He is not." This argument fails. Counsel's statement was made in the context of a group plea colloquy in which defendants were each separately stating whether they were accepting the government's plea offer; Chavez-Diaz's counsel indicated he was not. But counsel's statement that "Mr. Chavez-Diaz is not waiving his appellate rights" necessarily pertained only to those rights that could be preserved despite pleading unconditionally. The statement did not reference Chavez-Diaz's equal protection and due process claims, and Chavez-Diaz points to nothing in the record indicating he was told that he could appeal his conviction on those grounds.

The Supreme Court's "decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty," and

"[r]elinquishment derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses." *Broce*, 488 U.S. at 573–74. Under the circumstances, there is thus no basis to conclude that Chavez-Diaz's plea was unknowing or involuntary.

\*     \*     \*

We hold that Chavez-Diaz waived his right to appeal his equal protection and due process claims by entering an unconditional guilty plea. We therefore reverse the district court's holding to the contrary and remand with instructions to dismiss the appeal.

**REVERSED and REMANDED.**