FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. EDUVIGES AYALA-BELLO, *Defendant-Appellant.* | No. 19-50366 D.C. No. 3:19-cr-00735-AJB-1 |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. WALTER GERMAN VELEZ-GONZALEZ, *Defendant-Appellant.* | No. 19-50368 D.C. No. 3:19-cr-00735-AJB-2 OPINION |

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted December 10, 2020
Pasadena, California

Filed April 26, 2021

Before:  Paul J. Watford, Amul R. Thapar,[*] and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Thapar;
Concurrence by Judge Watford

_____

**SUMMARY**[**]

_____

**Criminal Law**

The panel affirmed two defendants' convictions, following a bench trial, for attempting to enter the United States illegally in violation of 8 U.S.C. § 1325(a)(1).

The defendants argued that the government violated their right to equal protection by prosecuting them for first-time illegal entry, a petty offense, on the normal criminal docket rather than through the federal courts' Central Violations Bureau (CVB) process under which defendants charged with petty offenses generally receive lighter punishment.

The panel held that the government does not violate equal protection by prosecuting illegal border crossings on the normal criminal docket.

The panel held that the policy here does not discriminate against a protected class or infringe a fundamental right.  The

_____

[*] The Honorable Amul R. Thapar, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

panel wrote that the defendants give no evidence to refute the government's position that it makes docketing assignments based solely on the charged offense, which is not impermissible discrimination. And even if the defendants had shown that the government makes docketing assignments based on the defendant's citizenship status, at most the rational basis test would apply because federal classifications based on alienage receive rational basis review.

Applying the rational basis test, the panel concluded that the government's decision to prosecute first-time illegal entry separately from other petty offenses passes constitutional muster. The panel saw at least two rational bases: that the government has a legitimate interest in controlling our borders, and that the government has a legitimate interest in managing its prosecutorial resources. The panel concluded that the defendants did not carry their burden to negate every conceivable basis which might support the government's decision to prosecute them on the normal criminal docket.

Concurring in the judgment, Judge Watford agreed that the government did not violate the defendants' equal protection rights by prosecuting them for illegal entry on the regular criminal docket rather than through the CVB process, but in his view, the government's actions are justified solely because of the particular characteristics of the class of offenders at issue and the particular features of these two different criminal processes. He agreed that rational basis review applies here, but disagreed with the majority's suggestion that the government may treat citizens and non-citizens differently merely because they have been charged with different offenses. He also questioned the majority's position that, unlike state laws, all federal laws that classify

on the basis of alienage are exempt from heightened scrutiny.

## COUNSEL

Karen Hartzler (argued), Federal Defenders of San Diego Inc., San Diego, California; Keith Rutman, San Diego, California; for Defendants-Appellants.

David Chu (argued), Assistant United States Attorney; Daniel E. Zipp, Chief, Appellate Section, Criminal Division; Robert S. Brewer Jr., United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

## OPINION

THAPAR, Circuit Judge:

Some federal district courts have a separate process for resolving minor criminal offenses. These defendants generally receive lighter punishment. And in exchange, the government avoids the costs of a full-blown criminal prosecution. The question before us is whether the government violates equal protection by prosecuting illegal border crossings on the normal criminal docket. We hold that it does not.

I.

A.

When the federal government suspects a person has committed a crime, law enforcement typically makes an

arrest and brings the suspect before a magistrate judge for an initial appearance and a bail determination. *See* Fed. R. Crim. P. 5(a); 18 U.S.C. § 3142(a). If charges have not already been filed before the arrest, a federal prosecutor reviews the evidence and decides whether to press charges. For misdemeanors that may involve more than six months imprisonment, the prosecutor may either bring charges by filing a criminal information or complaint, or by asking a grand jury to return an indictment. *See* Fed. R. Crim. P. 58(b)(1). Once charges are filed and bail is set (if any), the case follows its normal course.

But there are other paths through the federal criminal justice system. Some entail favorable procedures for the defendant and often result in lighter punishment. For instance, when a person is suspected of committing a "petty offense"—an infraction or a misdemeanor involving six months or less of imprisonment—the government sometimes issues a citation instead of making an arrest. *See* 18 U.S.C. §§ 19, 3559(a)(7)–(9). The citation is then forwarded to the federal courts' Central Violations Bureau (CVB) for processing. Weeks later, the defendant receives a notice to appear by mail. And when the defendant comes to court, the government often negotiates an alternative resolution of the charges. Typical offenses prosecuted through the CVB process include shoplifting, driving without a license, and parking in a fire lane (when these offenses occur on federal property).

## B.

Eduviges Ayala-Bello and Walter Velez-Gonzales left Mexico and crossed the United States border illegally. When an electronic sensor notified border patrol agents, they located Ayala and Velez by tracking their shoeprints. The agents arrested the pair, and both admitted to illegal entry.

At their arraignment, the magistrate judge set bail at $1,000, which Ayala and Velez posted eight days later.

The government charged Ayala and Velez with attempting to enter the United States illegally. *See* 8 U.S.C. § 1325(a)(1). It was their first time being charged with that offense. And while first-time illegal entry is defined as a petty offense, the government prosecuted Ayala and Velez on the normal criminal docket. *See id.*; 18 U.S.C. § 3559(7).

Ayala and Velez moved to dismiss the charges, arguing that the government should have prosecuted them through the CVB process. The district court denied their motion, found them guilty at a bench trial, and sentenced them to time served. Ayala and Velez appealed.

## II.

On appeal, Ayala and Velez argue that the government violated their right to equal protection by prosecuting them on the normal criminal docket.[1] We disagree.

## A.

The Fourteenth Amendment forbids a state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Although the Fourteenth Amendment applies by its terms to state governments, the Supreme Court has extended the equal

---

[1] As we have previously noted, the Southern District of California's treatment of illegal entry differs in some respects from other offenses prosecuted on the normal criminal docket. *See United States v. Chavez-Diaz*, 949 F.3d 1202, 1204–05 (9th Cir. 2020). Ayala and Velez do not challenge that aspect of their prosecutions. Instead, they challenge only the government's failure to process their cases as CVB violations.

protection guarantee to bind the federal government too. *See Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954).

In simple terms, the right to equal protection ensures that everyone in a jurisdiction lives under the same laws. But "[o]f course, most laws differentiate in some fashion between classes of persons" without violating that right. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Consider an example. Congress may decide to punish tax cheats more severely than minor drug offenders. And that decision satisfies equal protection so long as it furthers a legitimate government interest. *See id.* (describing rational basis review). The Constitution requires closer scrutiny only if the government's policy discriminates against a protected class or infringes on a fundamental right. *Id.*; *see also United States v. Armstrong*, 517 U.S. 456, 464–65 (1996).

## B.

The policy here does not discriminate against a protected class or infringe a fundamental right. Instead, it distinguishes between defendants based on their criminal conduct—in this case, illegally entering the United States. And since criminal defendants are not a protected class, at most the rational basis test applies.[2] *See, e.g.*, *United States v. Ruiz-Chairez*, 493 F.3d 1089, 1091 (9th Cir. 2007) (reviewing for rational basis a sentencing guideline that

---

[2] Because we find that the rational basis test is satisfied here, we need not decide whether the government's policy should instead be deemed to be unreviewable. *Cf. Armstrong*, 517 U.S. at 464–65 (absent reliance on "an unjustifiable standard such as race, religion, or other arbitrary classification," a prosecutorial decision "generally rests entirely in [the prosecutor's] discretion" (citations omitted)).

"punish[es] illegal reentrants more severely than other felons with the same prior criminal record").

Ayala and Velez disagree. In asking for heightened scrutiny, they say the government prosecutes all other petty offenses through the CVB process. So the choice to prosecute first-time illegal entry on the normal docket discriminates against aliens. After all, only aliens can commit the crime of "[i]mproper entry by [an] alien." *See* 8 U.S.C. § 1325.

Ayala and Velez's argument falls short. Let's assume they are correct that first-time illegal entry is the only petty offense prosecuted on the normal criminal docket. All that shows is that the government treats a particular criminal offense differently from other offenses. That is not impermissible discrimination. At best, the government's policy has a disparate impact on aliens, since only aliens can be charged with illegal entry. But disparate impact does not prove disparate treatment. *See Wayte v. United States*, 470 U.S. 598, 610 (1985). To show alienage as a factor driving the government's policy, Ayala and Velez might have offered evidence that citizens and noncitizens charged with the *same offense* are treated differently. Yet despite offering pages of data on the government's docketing assignments, they do not identify a single instance in which an alien and a citizen committed the same offense but were prosecuted on different dockets. In short, Ayala and Velez give no evidence to refute the government's position that it makes docketing assignments based solely on the charged offense.

But even if Ayala and Velez had shown that the government makes docketing assignments based on the defendant's citizenship status, we would still review the government's policy, at most, under the rational basis test.

Federal classifications based on alienage receive rational basis review. *Sudomir v. McMahon*, 767 F.2d 1456, 1464 (9th Cir. 1985) (citing *Mathews v. Diaz*, 426 U.S. 67, 83 (1976)). True, courts must apply heightened scrutiny to *state* policies that distinguish based on alienage. *Graham v. Richardson*, 403 U.S. 365, 372 (1971). But as the Supreme Court has explained, state policies based on alienage "involve[] significantly different considerations" than federal policies. *Diaz*, 426 U.S. at 84. Immigration is a federal matter. So while a state-run program that treats aliens differently from citizens might raise an eyebrow, "a comparable classification by the Federal Government is a routine and normally legitimate part of its business." *Id.* at 85; *see also United States v. Barajas-Guillen*, 632 F.2d 749, 751 (9th Cir. 1980). The policy at issue is federal, so at most the rational basis test would apply to docketing assignments based on alienage.

C.

Having settled on the appropriate standard of review, we conclude that the government's decision to prosecute first-time illegal entry separately from other petty offenses passes constitutional muster.

Under the rational basis test, a federal policy survives an equal protection challenge "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). The government doesn't have to articulate the purpose of its policy or the reasons for its classifications. Instead, the party raising an equal protection challenge must negate "every conceivable basis which might support it." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (citation omitted).

Ayala and Velez haven't carried that burden.  We see at least two rational bases for the government's decision to prosecute first-time illegal entry differently from other petty offenses.  First, the federal government has a legitimate interest in controlling our borders.  *Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953).  So when individuals enter the United States illegally, it is not irrational for the government to conclude that detaining them is in the public's best interest.  Plus, as the government points out, releasing illegal entrants once caught would just incentivize more illegal border crossings.  Not only that, but it is much harder for the government to keep track of illegal entrants who are released into the country.  And for many of these defendants, a CVB prosecution is simply unworkable because there is nowhere to send a notice to appear.  Each of these reasons supports the government's practice of prosecuting illegal entrants on the normal docket.

Second, the government has a legitimate interest in managing its prosecutorial resources.  Prosecution on the normal docket usually carries more severe consequences for the defendant, but it also costs the government more time and resources.  Balancing these costs and consequences is the hallmark of prosecutorial discretion, a constitutional power that lies at the core of the executive branch.  *See Wayte*, 470 U.S. at 607.  To strike that balance, the government can rationally choose to prosecute certain offenses (like illegal entry) more vigorously than others to deter future violations, to protect the public, and to effectuate just punishment.  And absent evidence of racial or other arbitrary distinctions, the government is within its rights to do so.  *See id.* at 608–10.

For these reasons, the government could reasonably conclude that the CVB process is a bad fit for illegal entry.

And the government does not act irrationally by prosecuting illegal entry on the normal docket.[3]

### III.

Ayala and Velez have not carried their burden to negate "every conceivable basis" which might support the government's decision to prosecute them on the normal criminal docket. *Beach Commc'ns*, 508 U.S. at 315. The government's policy is supported by a rational basis and does not violate equal protection.

We **AFFIRM**.

---

WATFORD, Circuit Judge, concurring in the judgment:

I agree with my colleagues that the government did not violate the defendants' equal protection rights by prosecuting them for illegal entry on the regular criminal docket rather than through the streamlined Central Violations Bureau (CVB) process. In my view, however, the government's actions are justified in this case solely because

---

[3] In arguing that the government lacks a rational basis for prosecuting them on the normal docket, Ayala and Velez offer a single year's worth of data showing that defendants charged with illegal entry are more likely to appear for their court dates than CVB defendants. But under rational basis review, governmental choice "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315. In any event, these statistics suggest that the government's decision to prosecute illegal entrants on the normal criminal docket improves court attendance. Although Ayala and Velez read the statistics differently, the government is entitled to favorable inferences under the rational basis test.

of the particular characteristics of the class of offenders at issue and the particular features of these two different criminal processes. In another case, the government could well violate the equal protection guarantee by targeting subgroups of criminal defendants based on their alienage.

Like my colleagues, I will assume that the defendants are right in asserting that the government prosecutes all petty offenders through the CVB process, with the exception of those charged with illegal entry under 8 U.S.C. § 1325. Rational basis review is nonetheless justified because illegal entry defendants, as a class, are not similarly situated to other petty offenders. *See Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Those charged with illegal entry are less likely to have a permanent mailing address or records on file with government agencies. And they face different considerations as to whether to appear for court proceedings than citizens do, given the potential immigration consequences of a criminal prosecution.

These unique characteristics of illegal entry defendants not only justify the application of rational basis review, but also supply a rational basis for the government's charging policy. A key difference between the CVB process and the regular criminal docket is that CVB defendants are given a citation, released, and sent a court summons later, as opposed to being arrested and detained or released on bond. Because illegal entry defendants often lack a reliable mailing address, it would be more difficult to send them a court summons. And because they have additional reasons to avoid showing up in court, it may be more challenging to secure their appearance without the coercive restraint of detention or release on bond. Thus, prosecuting illegal entry defendants on the regular criminal docket is rationally related to the government's legitimate interest in ensuring

that those charged with illegal entry appear for court proceedings. *See Cleburne*, 473 U.S. at 440.

While I agree that rational basis review applies here, I disagree with the majority's suggestion that the government may treat citizens and non-citizens differently merely because they have been charged with different offenses. If there are no meaningful differences between the severity of the two offenses, and the two groups are similarly situated in all ways that might pertain to the differential treatment, the government engages in discrimination on the basis of alienage, even if the two groups are technically being prosecuted for different crimes. Were it otherwise, the government could freely discriminate against non-citizens simply by creating two separate criminal offenses—one for citizens, one for non-citizens—encompassing offenders who have engaged in the same unlawful behavior.

I also question the majority's fallback position that, unlike state laws, all federal laws that classify on the basis of alienage are exempt from heightened scrutiny. It is true that in *Mathews v. Diaz*, 426 U.S. 67 (1976), the Supreme Court suggested that a lower tier of scrutiny applies to federal distinctions between citizens and non-citizens, given the federal government's "broad power over naturalization and immigration." *Id.* at 79–80, 84–85. But that case concerned non-citizens' eligibility for Medicare benefits, not the process they are afforded as part of a criminal prosecution. In other cases, the Court has placed limitations on the federal government's broad authority over immigration when criminal penalties are implicated. *See, e.g.*, *United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987). Given that the Court has never held that federal *criminal* classifications based on alienage are subject only to rational basis review, I

would not rely on that rationale, especially since it is not necessary to the application of rational basis review here.