IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39185-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CALEB J. SHARPE, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — When Caleb Sharpe was 15 years old, he brought guns to his school and opened fired on students and faculty. He eventually pleaded guilty to one count of aggravated first degree murder, three counts of attempted first degree murder, and one count of second degree assault against 48 victims. After an extensive sentencing hearing, the trial court imposed an indeterminate sentence of 40 years to life for the conviction of aggravated first degree murder. The court imposed a five-year firearm enhancement and sentences on the other offenses concurrent to its sentence on the aggravated murder charge.

On appeal, Sharpe raises several challenges to his sentence. First, he contends that former RCW 10.95.030(3)(a)(i) (2015)[1] required an exact sentence of 25 years to life for

---

[1] The statute was amended effective July 2023. *See* LAWS OF 2015, ch. 134, § 5. Subsection (3)(a)(i) was renumbered and is now contained in RCW 10.95.030(2)(a)(i).

defendants who are under the age of 16 at the time they commit this crime, and the court's sentence violated this statute. Second, Sharpe asserts that the firearm enhancement under RCW 9.94A.533(3) does not apply to defendants who are under the age of 16 when they commit the crime of aggravated first degree murder. Third, Sharpe argues that a sentence of 40 years to life is an unconstitutional de facto life sentence. Finally, he contends that his confession to police shortly after being arrested was involuntary and the trial court erred by considering the confession during sentencing.

The State concedes that former RCW 10.95.030(3)(a)(i) requires a specific sentence and the court's sentence of 40 years to life violated this statute. Thus, the State agrees that resentencing is required. The State disagrees with Sharpe's analysis and application of the firearm enhancement, and argues that it can still be applied consistent with the sentence required by RCW 10.95.030(3)(a)(i) so long as Sharpe's minimum term does not exceed 25 years. Finally, the State contends that Sharpe waived any challenges to the admissibility of his confession when he pleaded guilty.

We accept the State's concession and hold that former RCW 10.95.030(3)(a)(i) requires a trial court to impose the exact sentence of 25 years to life on a defendant who was under the age of 16 when they committed the crime of aggravated first degree murder. We decline to decide whether and in what manner the firearm enhancement can be applied under these circumstances since the issue was not preserved and can be raised at resentencing. Finally, we hold that Sharpe waived his right to challenge his confession

2

when he pleaded guilty. We grant the parties' joint request to reverse Sharpe's sentence and remand for de novo resentencing. Since we remand for resentencing, we decline to address Sharpe's claim that a 40-year sentence amounted to a de facto life sentence.

BACKGROUND

When Caleb Sharpe was 15 years old, he opened fire against his fellow students at Freeman High School, resulting in the death of one student and injuring three others. Following the shooting, police apprehended Sharpe and he confessed to committing the crimes. He explained that he had carefully planned every aspect of the attack and had taken steps to prevent his plan from being discovered.

The State charged Sharpe with one count of aggravated first degree murder with a firearm enhancement, three counts of attempted first degree murder, and 48 counts of second degree assault.

The trial court held a CrR 3.5 hearing during which it determined that Sharpe's confession to police was admissible. Following the hearing, defense counsel filed several motions for discretionary review with this court, including a challenge to the trial court's decision at the CrR 3.5 hearing and a challenge to a separate trial court decision determining that Sharpe could not argue that he was not guilty by reason of insanity. *See* Comm'r's Ruling, No. 38337-7-III (Wash. Ct. App. Jan. 11, 2022).

Before this court decided any of the motions, Sharpe decided to plead guilty to aggravated first degree murder with a firearm enhancement, three counts of attempted

3

first degree murder, and one count of second degree assault against 48 victims. The court

held a sentencing hearing over the course of six months, during which it listened to more

than 200 victim impact statements and expert testimony regarding the impact of Sharpe's

youth on his crimes and culpability.

Both parties submitted sentencing memoranda to the court. Sharpe requested a

determinate sentence of 20 years on the first degree murder charge, to run concurrent

with the other sentences. In his memorandum, Sharpe indicated that the standard range

sentence under former RCW 10.95.030(3)(a)(i) for a person under the age of 16

convicted of aggravated first degree murder was 25 years to life. Sharpe also pointed out

that the standard range sentence under the sentencing guidelines would be 25 years to life

with a 5-year enhancement for the firearm, which could be run consecutive with any of

the sentences imposed on the other counts. Sharpe asserted that because he was a

juvenile, the trial court had discretion and could impose a sentence below the standard

range.

The State submitted a memorandum in which it provided a lengthy recitation of

the case law surrounding the sentencing of juveniles in the United States Supreme Court

and Washington courts. The State concluded by requesting an indeterminate sentence of

35 years to life, citing to former RCW 10.95.030(3)(a)(i). The State reasoned that the

hallmark features of youth did not diminish Sharpe's culpability and "[e]ven when

accounting for and assigning more weight to Mr. Sharpe's potential for rehabilitation,

4

Mr. Sharpe fails to show a downward departure is justified in this case." Clerk's Papers (CP) at 2530.

At sentencing, the State characterized its requested sentence of 35 years as accounting for Sharpe's youth: "The state's [sic] requested sentence of 35 years minimum to life, under the ISRB[2] jurisdiction, is not only a significant mitigation from the sentence an adult offender would face, but it's also a mitigation within the current structure of the law that applies to juvenile offenders sentenced as adults." Rep. of Proc. (RP) (Sidener) at 2759. Sharpe's counsel noted that he had pleaded guilty against the advice of counsel given that his appeal was still pending.

Before announcing its decision, the sentencing court went through the *Miller*[3] factors, finding that "the hallmark features of youth . . . undoubtedly played a significant part in Mr. Sharpe's actions" and that Sharpe had demonstrated that he could be successfully rehabilitated. RP (Sidener) at 2781-82, 2788-93. The court found it was "not bound by any otherwise mandatory statutory directive" when sentencing Sharpe, because sentencing Sharpe as a juvenile was "entirely" within its discretion. CP at 2604. The court noted that if Sharpe had been sentenced as an adult under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, his standard range would have been 900 to 1080 months to life imprisonment. It found that a sentence of 40 years to life was a

---

[2] Indeterminate Sentence Review Board.
[3] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

significant mitigation downward from the SRA's presumptive range of 900 to 1080 months and was an "appropriate sentence for aggravated first degree murder, in the context of youthful sentencing." CP at 2608.

Accordingly, the court sentenced Sharpe to 480 months to life for his aggravated first degree murder conviction, plus a 60-month firearm enhancement to run concurrently as an exceptional downward sentence. Sharpe also received sentences of 240 months for the three attempted first degree murder convictions and 53 months for the second degree assault conviction, to run concurrently with his sentence for first degree aggravated murder.

In the judgment and sentence, the court stated that Sharpe's standard range for aggravated first degree murder was 25 years to life with a 60-month firearm enhancement for a standard range of 30 years to life.

Sharpe appeals his sentence.

ANALYSIS

1.    SENTENCES UNDER FORMER RCW 10.95.030(3)(a)(i)

In his first issue, Sharpe contends that his indeterminate sentence of 40 years to life for aggravated first degree murder violated former RCW 10.95.030(3)(a)(i). He contends that this statute does not provide a range, but instead requires a specific sentence. Neither party raised this argument below. Nevertheless, to its credit, the State concedes that the statute applies and requires that a defendant who was under the age of

16 at the time of committing the crime of aggravated first degree murder must receive the specific indeterminate sentence of 25 years to life.

Sharpe's sentencing issue on appeal is one of statutory interpretation. Our review of this issue is de novo. *State v. J.W.M.*, 1 Wn.3d 58, 86, 524 P.3d 596 (2023). We review the statute to determine legislative intent. *Id.* We discern "legislative intent from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Whatcom County v. Hirst*, 186 Wn.2d 648, 667, 381 P.3d 1 (2016).

Juvenile offenders convicted of aggravated first degree murder receive an indeterminate sentence with a minimum term that is set by a sentencing court and a maximum term of life. *In re Pers. Restraint of Hinton*, 1 Wn.3d 317, 331-33, 525 P.3d 156 (2023). When the minimum term has passed, the juvenile offender receives a parole hearing before the ISRB at which they are entitled to a presumption of release. *Id.* at 331-32.

The sentencing guidelines for this offense provide a standard range sentence of life in prison without the possibility of parole for adult offenders and a sentence range of 25 years to life for defendants who were 18 years of age or younger at the time of the offense. RCW 9.94A.510.

In response to the Supreme Court's decision in *Miller*, barring mandatory life without parole sentences for juveniles, our legislature adopted RCW 10.95.035 and amended RCW 10.95.030 to provide what is referred to as the *Miller*-fix statute. *See State v. Bassett*, 192 Wn.2d 67, 74, 428 P.3d 343 (2018). At the time Sharpe committed his offenses, the relevant portions of this statute read:

> (3)(a)(i) Any person convicted of the crime of aggravated first degree murder for an offense committed prior to the person's sixteenth birthday shall be sentenced to a maximum term of life imprisonment and a minimum term of total confinement of twenty-five years.
>
> (ii) Any person convicted of the crime of aggravated first degree murder for an offense committed when the person is at least sixteen years old but less than eighteen years old shall be sentenced to a maximum term of life imprisonment and a minimum term of total confinement of no less than twenty-five years. A minimum term of life may be imposed, in which case the person will be ineligible for parole or early release.

Former RCW 10.95.030 (2015).[4]

Unless otherwise apparent from legislative intent as determined by the rules of statutory interpretation, the word "shall" within the context of a statute generally acts to impose a mandatory duty. *Dep't of Ecology v. State Fin. Comm.*, 116 Wn.2d 246, 252, 804 P.2d 1241 (1991); *Erection Co. v. Dep't of Lab. & Indus.*, 121 Wn.2d 513, 518, 852 P.2d 288 (1993). However, the word "shall" may be read as directory rather than

---

[4] The statute's amendment in 2023 removed the last sentence in section (ii) after it was ruled unconstitutional in *Bassett*, 192 Wn.2d at 77. *See* LAWS OF 2015, ch. 134.

mandatory when "the thing directed . . . is a mere matter of form" or whether it is "the essence of the thing required." *State v. Miller*, 32 Wn.2d 149, 155, 201 P.2d 136 (1948).

Here, the imposition of a specific sentence is a substantive matter, not a mere matter of form or procedure. It is instead "the essence of the thing required." Thus, when the statute applies, it leaves no room for a court to impose a minimum term of total confinement that exceeds 25 years. Former RCW 10.95.030(3)(a)(i).

The context of this provision further supports this interpretation. Former RCW 10.95.030(3)(a)(ii), which immediately follows the provision at issue, lays out the sentence for individuals who are age 16 to 18 when they commit the crime of aggravated first degree murder, stating that their minimum term of confinement "shall be no less than twenty-five years." The legislature's decision to separately lay out a sentence for individuals age 16 to 18 years of age strongly suggests that these provisions provide for different possible sentences. The wording used in the latter statute, "no less than twenty-five years," indicates that when this provision applies, the sentencing court has discretion to impose a minimum sentence greater than 25 years.

Thus, we agree with the parties that the plain language of former RCW 10.95.030(3)(a)(i) requires the court to impose a specific sentence for offenders who are under the age of 16 when they commit the crime of aggravated first degree murder: an indeterminate sentence with a minimum term of 25 years and a maximum term of life in prison.

9

Despite what would otherwise appear to be mandatory language in the statute, Sharpe contends, and the State agrees, that while a judge is prohibited from imposing a minimum term that is longer than 25 years, the court always has discretion to impose a minimum term that is lower than 25 years. We agree. In *State v. Houston-Sconiers*, our Supreme Court held that "sentencing courts must have absolute discretion to depart as far as they want below otherwise applicable SRA ranges and/or sentencing enhancements when sentencing juveniles in adult court, regardless of how the juvenile got there." 188 Wn.2d 1, 9, 391 P.3d 409 (2017). The court's discretion in sentencing juveniles to an exceptional *downward* sentence applies even where a statute would otherwise limit it. *State v. Gilbert*, 193 Wn.2d 169, 175, 438 P.3d 133 (2019).

On remand, the sentencing court will be required to apply former RCW 10.95.030(3)(a)(i) in sentencing Sharpe on his conviction of aggravated first degree murder. While the statute requires a specific sentence of 25 years to life, the court retains the discretion to impose a minimum term below 25 years.

2.     FIREARM ENHANCEMENT AND DE FACTO LIFE SENTENCE

Sharpe also contends that the 60-month firearm enhancement required by RCW 9.94A.533(3) does not apply to juveniles who are sentenced under former RCW 10.95.030(3)(a)(i). The State disagrees and contends that the enhancement can still be imposed without increasing the minimum term above 25 years.

Sharpe did not raise this issue below and provides no analysis as to why we should consider the issue for the first time on appeal. *See* RAP 2.5(a). We note that the sentencing court imposed the firearm enhancement, but ran it concurrent with Sharpe's sentence for first degree murder. *See Houston-Sconiers*, 188 Wn.2d at 34 (a trial court sentencing juveniles in adult court has absolute discretion to depart from otherwise mandatory sentencing enhancements).

Sharpe also assigns error to the court's sentence of 40 years as a de facto life sentence. Because we are remanding for a de novo resentencing, we decline to address these issues here, leaving the parties free to raise them at resentencing.

3.      SHARPE'S CONFESSION AT SENTENCING

Sharpe raises several arguments regarding statements he made to police during their interrogation of him following the shooting. He argues that the court erred in considering these statements at sentencing because they were clearly coerced considering the totality of the circumstances. Sharpe also argues his attorney was ineffective by failing to raise arguments at the CrR 3.5 hearing and by agreeing to admit his confession at sentencing. We decline to consider these arguments, holding that Sharpe waived all arguments related to the voluntariness of his confession when he pleaded guilty.

"'[A] guilty plea waives or renders irrelevant all constitutional violations that occurred before the guilty plea, except those related to the circumstances of the plea or to the government's legal power to prosecute regardless of factual guilt.'" *State v.*

*Brandenburg*, 153 Wn. App. 944, 948, 223 P.3d 1259 (2009) (internal quotation marks

omitted) (quoting *State v. Amos*, 147 Wn. App. 217, 225, 195 P.3d 564 (2008), *abrogated

on other grounds by State v. Hughes*, 166 Wn.2d 675, 212 P.3d 558 (2009)).  In other

words, by pleading guilty, a defendant waives all objections to errors committed prior to

their arraignment, including pretrial motions to suppress.  *State v. Olson*, 73 Wn. App.

348, 353, 869 P.2d 110 (1994); *State v. Smith*, 134 Wn.2d 849, 953 P.2d 810 (1998).

However, a defendant who pleads guilty may still raise collateral issues on appeal like the

validity of the statute, sufficiency of the information, jurisdiction of the court, and the

circumstances under which the plea was entered.  *Brandenburg*, 153 Wn. App. at 948.

Within the federal context, the United States Supreme Court has also held that,

unless the law provides otherwise, by pleading guilty, a defendant is also waiving their

right to contest any evidence the State might have offered against them.  *McMann v.

Richardson*, 397 U.S. 759, 766, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).  The Supreme

Court further explained in *Tollett v. Henderson*, that a criminal defendant's decision to

plead guilty results in a waiver of all potential pre-existing arguments related to

constitutional violations:

> [A] guilty plea represents a break in the chain of events which has preceded
> it in the criminal process.  When a criminal defendant has solemnly
> admitted in open court that he is in fact guilty of the offense with which he
> is charged, he may not thereafter raise independent claims relating to the
> deprivation of constitutional rights that occurred prior to the entry of the

12

> guilty plea.  He may only attack the voluntary and intelligent character of
> the guilty plea.

411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973).

Despite Sharpe's attempts to reframe the issue, the rule on waiver applies in this case.  Notably, Sharpe does not contend that the alleged coercive interrogation had an impact on the voluntariness of his guilty plea.  As part of his *voluntary* guilty plea, Sharpe waived any right to object to prior potential errors, including his interrogation by police and his motion to suppress the interrogation.

Sharpe argues that defense counsel was ineffective for failing to argue at the CrR 3.5 hearing that his confession was coerced.  The alleged ineffectiveness occurred prior to sentencing, during a pretrial motion to suppress.  As explained above, by pleading guilty, Sharpe waived any allegation of error regarding the CrR 3.5 hearing, including whether his counsel was ineffective at the hearing.

Sharpe further argues that defense counsel was ineffective at sentencing for stipulating to the admission of his allegedly coerced confession and failing to argue that his confession was coerced and the trial court erred in considering the confession.  But the underlying basis for Sharpe's arguments remains his assertion that his confession was coerced and therefore inadmissible.  Again, any argument regarding the admissibility of his confession was waived by his decision to plead guilty.

Additionally, as the State points out, defense counsel attempted multiple times to reopen the CrR 3.5 hearing, even filing a motion for discretionary review with this court regarding the trial court's denial of all future motions related to the CrR 3.5 hearing. Sharpe also filed a motion for discretionary review with this court related to the trial court's denial of his request to present a defense of not guilty by reason of insanity. *See* Comm'r's Ruling, No. 38602-3-III (Wash. Ct. App. Jan. 11, 2022). Sharpe's decision to plead guilty resulted in the dismissal of these pending motions. And defense counsel, on the record at sentencing, informed the court that Sharpe was pleading guilty against the advice of counsel, notwithstanding a pending motion for discretionary review regarding his not guilty by reason of insanity plea.

Sharpe made the decision to plead guilty while his motions for discretionary review were pending, and he had the right to do so. However, by doing so, he waived his right to raise any allegations of error that arose prior to the entry of his guilty plea. This includes all claims related to his interrogation by police. Just as this court cannot review the CrR 3.5 hearing, it cannot review claims where the underlying basis for the claim is the voluntariness of his confession to police.

Nonetheless, Sharpe argues that he may challenge the voluntariness of his confession regardless of his guilty plea, citing *State v. Cross*, 156 Wn.2d 580, 621, 1324 P.3d 80 (2006), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018). In *Cross*, the defendant pleaded guilty and a sentencing jury sentenced him

to death. The court began its analysis of the issue by noting that since this was a capital case, it would construe the procedural rules liberally. *Id*. at 594. As part of his appeal, the defendant challenged the admissibility of evidence presented to the sentencing jury, including whether police had authority to enter his house without a warrant and whether his post-*Miranda*[5] statements were admissible. *Id*. at 618-20. After recognizing the general rule that such arguments are waived when a defendant pleads guilty unless the defendant claims the errors provide grounds for withdrawing the plea, the court proceeded to address the merits of the issues. *Id*. at 619.

We do not read *Cross* as overruling significant precedent sub silentio. *See State v. Lupastean*, 200 Wn.2d 26, 513 P.3d 781 (2022) ("'Where we have expressed a clear rule of law we will not—and should not—overrule it sub silentio.'") (internal citation omitted) (quoting *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 280, 208 P.3d 1092 (2009)). Notably, since *Cross* was decided in 2006, several cases have reaffirmed the general rule of waiver.[6] Instead, we read *Cross* as the court exercising its discretion to address the issues in light of the unique circumstances. Those circumstances do not

---

[5] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[6] *See State v. Peltier*, 181 Wn.2d 290, 294, 332 P.3d 457 (2014) ("A guilty plea waives all defenses other than the failure of the information to charge an offense."); *Brandenburg*, 153 Wn. App. at 948; *State v. Wilson*, 162 Wn. App. 409, 415-16, 253 P.3d 1143 (2011); *In re Pers. Restraint of Bybee*, 142 Wn. App. 260, 268, 175 P.3d 589 (2007).

15

exist here. Sharpe's sentence will be imposed by a judge not a jury, and Sharpe is not facing the death penalty.

Our holding does not preclude Sharpe from arguing to the resentencing court that his confession was coerced and thus should be given little or no weight. But by pleading guilty, Sharpe has waived any challenge to the admissibility of his confession.

We vacate Sharpe's sentence and remand for de novo resentencing.

_____
       Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

16