# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>MICHAEL ALLAN GILLETTE,<br><br>              Petitioner. | No.  59610-5-II<br><br><br>UNPUBLISHED OPINION |

PRICE, J. — In his personal restraint petition (PRP), Michael A. Gillette seeks relief following his guilty plea to one count of attempted second degree rape and one count of attempted commercial sexual abuse of a minor.  Gillette argues that (1) law enforcement engaged in outrageous government conduct, (2) several of his community custody conditions either violated his constitutional rights or were not crime related, and (3) he received ineffective assistance of counsel.

The State concedes that one community custody condition related to entering into relationships with persons who have minor aged children should be remanded to the superior court for revision.  The State also concedes that a condition requiring Gillette to undergo a substance abuse evaluation and recommended treatment should be stricken.

We accept the State's concessions and remand for the superior court to revise these two community custody conditions.  Otherwise, we reject Gillette's arguments.

Accordingly, we grant in part, and deny in part, Gillette's PRP and remand to the superior court for proceedings consistent with this opinion.

FACTS

I. BACKGROUND

In November 2022, Gillette was arrested during an undercover operation run by the Washington State Patrol Missing and Exploited Children Task Force (MECTF). MECTF posted an advertisement on a website (skipthegames) that is used for "prostitution and sexual type activity." Resp. to PRP App. at 20. The advertisement listed the age of an undercover account (or fictional persona) as 19 and included sexual services that would be provided by the fictional persona.

Gillette answered the advertisement and exchanged numerous text messages with an undercover detective, posing as the fictional persona. In the course of these messages, the detective disclosed that the fictional persona was not 19 as described in the advertisement, but that they were "young" and only 13 years of age. *Id.* at 22. Gillette responded that "young" was "fine." *Id.*

Gillette made an agreement with the detective for oral sex in Gillette's truck for $80 at a predetermined location near a gas station. When Gillette arrived at the location, he was arrested. After the arrest, law enforcement found $80 in cash in Gillette's possession.

The State charged Gillette with three counts—attempted second degree rape of a child, communication with a minor for immoral purposes, and attempted commercial sexual abuse of a minor.

II. GUILTY PLEA

The State offered Gillette a plea deal. The offer provided that in exchange for Gillette pleading guilty to attempted second degree rape and attempted commercial sexual abuse of a minor, the State would dismiss the remaining count and recommend a sentence of 88 months to

life. *Id.* at 31. The offer stated that "all conditions of this offer must be agreed or [the] offer will be rescinded" and that if defense counsel filed any motions, the offer would be deemed "reject[ed]." *Id.* (capitalization and underscore omitted).

Gillette accepted the State's offer. At the guilty plea hearing, Gillette told the superior court that he had reviewed the guilty plea statement with his attorney and understood it. He also admitted that the factual statement contained in his guilty plea was true and accurate. Following this colloquy, the superior court accepted Gillette's guilty plea, finding that it was made knowingly, intelligently, and voluntarily, and convicted him of attempted second degree rape of a child and attempted commercial sexual abuse of a minor.

III. SENTENCING AND COMMUNITY CUSTODY CONDITIONS

At sentencing, the superior court imposed the sentence recommended by the State. When the superior court addressed proposed community custody conditions, Gillette's counsel objected to a condition restricting Gillette's contact with minor aged children (condition 2 of Appendix H) because Gillette wanted to have contact with his biological children. The superior court subsequently asked the mother of Gillette's biological children (Gillette's ex-wife) whether she was supportive of Gillette having contact with the children, and if so, what type of contact. Gillette's ex-wife responded that she was supportive of phone and video contact. As a result, the superior court modified condition 2 to permit this type of contact with Gillette's biological children, plus additional contact "as requested by bio[logical] mother." Verbatim Rep. of Proc. (VRP) at 20.

Gillette's counsel informed the superior court that Gillette wanted to be allowed to go to church, but that counsel had told Gillette that he would not make such a request. Defense counsel told the superior court that he had explained to Gillette that because children are present at church, the superior court would not grant such a request. Consistent with defense counsel's expectation, the superior court told Gillette during its oral ruling that the community custody conditions would prohibit Gillette from attending church.

Near the end of sentencing, the superior court asked Gillette if his counsel had "gone over Appendix H" with Gillette (Appendix H included many of the community custody conditions). Gillette said, "Yeah, I suppose." *Id.* at 18. At which point, Gillette's counsel told the superior court that he would review the community custody conditions "again" with Gillette. *Id.* A short time later, the superior court asked Gillette whether he had an opportunity to review the judgment and sentence and Appendix H with his counsel. Gillette responded that he had and he did not have any questions about them.

The final judgment and sentence imposed numerous community custody conditions. Within the judgment and sentence itself, the superior court imposed a condition that required Gillette during the period of supervision to "undergo an evaluation for, and fully comply with, treatment for . . . substance use disorder." Resp. to PRP App. at 4.

In the attached "Appendix H," the superior court imposed additional conditions, including the following:

> (b) **OTHER CONDITIONS**: Defendant shall comply with the following other conditions during the term of community placement/custody:
>
> . . . .
>
> 2) The defendant shall have no contact with minor aged children [without] prior approval of the Community Corrections Officer [CCO] and/or treatment provider.

4

(D[efendant] may have contact w[ith] his biological children via phone or video.) Or as requested by bio[logical] mother.

. . . .

4) The defendant shall not enter into any relationship with persons who have minor aged children in their custody or care without prior approval of the [CCO] and/or treatment provider.

5) The defendant shall not possess or view Sexually Explicit Material as defined in RCW 9.68.130.

6) The defendant shall not consume alcohol and/or controlled substances during the period of community custody.

. . . .

9) The defendant shall submit to random Urinalysis and Breathalyzer as directed by the assigned [CCO].

*Id.* at 13-14.

Gillette filed this timely pro se PRP.[1]

ANALYSIS

Relief by way of a collateral challenge through a PRP is extraordinary; the petitioner must meet a high standard before we will disturb an otherwise settled judgment. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). To obtain relief, a petitioner must demonstrate either a constitutional error resulting in actual and substantial prejudice or a nonconstitutional error that is a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Swagerty*, 186 Wn.2d 801, 807, 383 P.3d 454 (2016). If the petitioner fails to demonstrate actual and substantial prejudice or a fundamental defect, we deny the PRP. *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015).

---

[1] Counsel was originally appointed for Gillette. Gillette subsequently moved to represent himself, and the motion was granted.

To meet their burden in a PRP, the petitioner must state with particularity facts that, if proven, would entitle the petitioner to relief. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Bald assertions and conclusory allegations are not sufficient. *Id.* Arguments made only in broad, general terms are also insufficient. *In re Pers. Restraint of Rhem*, 188 Wn.2d 321, 327, 394 P.3d 367 (2017).

In his PRP, Gillette seeks collateral relief based on three arguments: (1) that his right to due process was violated because of outrageous government conduct, (2) that several of his community custody conditions either violated his constitutional rights or were not crime related, and (3) that he received ineffective assistance of counsel.

## I. OUTRAGEOUS GOVERNMENT CONDUCT

Gillette first argues that his convictions should be reversed because law enforcement violated his right to due process when it engaged in outrageous government conduct during the undercover operation. Gillette complains, for example, that law enforcement created an advertisement on a supposedly adults-only site and verified the account with photographs of a real adult and "fraudulently represented themselves as an adult looking for sex." Amended Pet. at 30. Gillette also appears to root his claim in the State's decision to bring charges against him in the first place. He explains,

> I am asserting the right not to be tried. The Entire operation prior to me ever making contact with Law Enforcement violated Due process, Fundamental Fairness, and any right to a Fair trial. My challenge is to the very Initiation of charge's [sic].

Reply to State's Response at 13.

The State responds that Gillette waived this argument when he pleaded guilty. We agree with the State.

6

"A valid plea waives or renders irrelevant all constitutional violations that occurred before the guilty plea [is entered], except those related to the circumstances of the plea or to the government's legal power to prosecute regardless of factual guilt." *In re Pers. Restraint of Reise*, 146 Wn. App. 772, 782, 192 P.3d 949 (2008). The reason for this rule is that a defendant who pleads guilty admits factual and legal guilt for the charged crime. *Id.* As a result, the guilty plea provides a sufficient and independent factual basis for conviction and punishment. *Id.*

Gillette does not argue that his claim of outrageous government conduct was "related to the circumstances of the plea"; rather, by rooting his claim to the initiation of charges, Gillette appears to contend that he meets the exception tied to the State's "legal power to prosecute" him. This exception to waiver, while less discussed in the case law, includes things related to the circumstances in which the State initiates charges against a defendant that are unrelated to the defendant's guilt. *See Blackledge v. Perry*, 417 U.S. 21, 30-31, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974).

Gillette's argument that a claim of outrageous government conduct is not waived by a guilty plea because it goes to the State's "legal power to prosecute" has been made before and rejected. *See United States v. Montilla*, 870 F.2d 549, 552-53 (9th Cir. 1989). In *Montilla*, after pleading guilty to a drug-related charge, the defendant argued on appeal that law enforcement had violated her due process rights by engaging in outrageous government conduct. *Id.* at 552. The defendant further argued that her claim of outrageous conduct was not waived by her guilty plea because it " 'went to the very power of the State to bring the defendant into court.' " *Id.* (quoting *Blackledge*, 417 U.S. at 30).

The *Montilla* court rejected this argument, stating that the exception to waiver related to the State's legal power to prosecute requires that the lack of authority must be evident from the charging documents. *Id.* at 552-53. It explained that the doctrine is limited "to cases in which the judge could determine at the time of accepting the plea, from the face of the indictment or from the record, that the government lacked the power to bring the indictment." *Id*. at 552. Because the drug-related charges filed against the defendant were "well within the government's power to prosecute" and because the defendant could not prove her claims of outrageous conduct without an evidentiary hearing or trial testimony, the court held that her claims were waived by pleading guilty. *Id.* at 553.

We agree with the reasoning from *Montilla*. Gillette's claim for outrageous government conduct does not relate to the State's power to prosecute. Without question, the crimes alleged against Gillette (sex-related crimes against a minor) are "well within" the State's power to prosecute. *Id.* Thus, Gillette's claim of outrageous government conduct was waived when he pleaded guilty.

## II. COMMUNITY CUSTODY CONDITIONS

Gillette challenges multiple community custody conditions. The State concedes that one condition (related to intimate relationships) should be modified, and one condition (related to substance use evaluation and treatment) should be stricken. We accept the State's concessions, but we reject Gillette's other community custody condition challenges.

We review community custody conditions for an abuse of discretion. *State v. Wallmuller*, 194 Wn.2d 234, 238, 449 P.3d 619 (2019). Imposing an unconstitutional condition necessarily is an abuse of discretion. *Id.*

8

Gillette challenges six different community custody conditions—five conditions found in Appendix H attached to the judgment and sentence and one condition found in his judgment and sentence itself.  First, Gillette argues that condition 2 of Appendix H violates his fundamental right to parent and his right to religious freedom.  The condition reads:

> 2) The defendant shall have no contact with minor aged children [without] prior approval of the [CCO] and/or treatment provider.  (D[efendant] may have contact w[ith] his biological children via phone or video.) Or as requested by bio[logical] mother.

Resp. to PRP App. at 13.

The right to parent and the right to the free exercise of religion are fundamental constitutional rights and state interference is subject to strict scrutiny.  *State v. Warren*, 165 Wn.2d 17, 34, 195 P.3d 940 (2008); *State v. Balzer*, 91 Wn. App. 44, 53, 954 P.2d 931, *review denied*, 136 Wn.2d 1022 (1998).  When a community custody condition burdens a fundamental right, we consider whether the condition is "reasonably necessary to accomplish the essential needs of the State and public order" and the condition must be "sensitively imposed."  *Warren*, 165 Wn.2d at 32.  Here, condition 2 is reasonably necessary to accomplish the essential needs of the State and public order – that is, protecting minors.  It is also sensitively imposed because it does not prohibit all contact with minors; Gillette is permitted to have phone and video contact with his biological children or as otherwise requested by the mother of his biological children.  We affirm condition 2.

Second, Gillette argues that condition 4 of Appendix H violates his right to marry and associate with his ex-wife and children.  Condition 4 reads:

> 4) The defendant shall not enter into any relationship with persons who have minor aged children in their custody or care without prior approval of the [CCO] and/or treatment provider.

9

Resp. to PRP App. at 13.

Gillette claims that this condition would prevent him from being in a romantic relationship with his ex-wife. The State concedes that this condition partially affects Gillette's right to marry and associate with his ex-wife. The State agrees that a modification of this condition should be made to expressly permit Gillette to have a relationship with his ex-wife as an exception to this condition. We accept the State's concession and remand for the superior court to amend condition 4 to permit Gillette to have a relationship with his ex-wife.

Third, Gillette argues that condition 5 of Appendix H is not crime related and violates his right to "intimate association with [his] spouse." Amended Pet. at 20. This condition reads:

> 5) The defendant shall not possess or view Sexually Explicit Material as defined in RCW 9.68.130.

Resp. to PRP App. at 13.

With respect to Gillette's challenge to the condition's crime-relatedness, our Supreme Court has previously concluded that this condition is generally crime related to sex offenses. *See State v. Nguyen*, 191 Wn.2d 671, 683-87, 425 P.3d 847 (2018). According to *Nguyen*, the prohibitions on sexually explicit materials relates to the "inability to control . . . sexual urges . . . ." *Id.* at 687. The court reasoned that "[i]t is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing 'sexually explicit materials,' the only purpose of which is to invoke sexual stimulation." *Id.* at 686. Eliminating access to sexually explicit materials attempts to "prohibit conduct that might cause the convict to reoffend." *Id.* at 687. As in *Nguyen*, because Gillette's crimes are related to his "inability to control . . . sexual urges," this condition is crime related.

Gillette also alleges that this condition violates his right to associate intimately with his ex-wife because it restricts his ability to exchange intimate pictures or view and purchase intimate adult items with his ex-wife. However, as discussed above, the superior court may restrict an offender's constitutional rights if the restriction is reasonably necessary to accomplish the essential needs of the State and public order and is sensitively imposed. *Warren*, 165 Wn.2d at 32. Here, considering *Nguyen*'s conclusions about sexually explicit materials, we reject Gillette's novel argument that access to these types of materials are necessary for his right to association. We affirm condition 5.

Fourth, Gillette contends that condition 6 of Appendix H is not crime related and violates his right to marry and associate with his ex-wife. Condition 6 reads:

> 6) The defendant shall not consume alcohol and/or controlled substances during the period of community custody.

Resp. to PRP App. at 13.

Neither of Gillette's arguments about condition 6 has merit. This condition need not be crime related; the superior court is permitted to prohibit the consumption of alcohol regardless of its connection to the crime. RCW 9.94A.703 (3)(e); *see also State v. Nelson*, __Wn.3d __, 565 P.3d 906, 917 (2025) (explaining that "conditions prohibiting alcohol . . . use were validly imposed pursuant to the sentencing court's statutory authority"). As a result, the superior court had the authority to impose this condition without any connection to Gillette's crimes.

There is also no support for Gillette's contention that this condition violates his right to marry and associate with his ex-wife. Gillette appears to argue that this condition prohibits him from cooking meals with his ex-wife involving alcohol. Gillette has cited no case, and we are aware of none, that connects, in any way, the right to marry or the right to associate with consuming

(or cooking with) alcohol. Bald assertions and conclusory allegations that this condition violates his right to marry and associate with his ex-wife are insufficient. *Rice*, 118 Wn.2d at 886. We affirm condition 6.

Fifth, Gillette contends that condition 9 of Appendix H must be stricken because it is not crime related. Condition 9 reads:

> 9) The defendant shall submit to random Urinalysis and Breathalyzer as directed by the assigned [CCO].

Resp. to PRP App. at 14.

Our Supreme Court has recently confirmed that a condition requiring random drug and alcohol testing does not need to be crime related. *Nelson*, 565 P.3d at 917. Here, the superior court prohibited Gillette from using drugs or alcohol. And once this condition was imposed, the superior court was entitled to impose random compliance testing regardless of any role that drugs or alcohol may have played in the underlying crimes. *Id.* So, we affirm condition 9.

Sixth and finally, Gillette contends that a condition located in his judgment and sentence (not Appendix H) that requires him to "undergo an evaluation for, and fully comply with, treatment for . . . substance use disorder" is not crime related. Resp. to PRP App. at 4. The State concedes that this condition is not crime related and should be stricken. We accept the State's concession and remand for the superior court to strike the substance abuse evaluation and treatment condition from Gillette's judgment and sentence.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Gillette next makes several arguments that he received ineffective assistance of counsel. He argues that his counsel (1) failed to file a pretrial motion to dismiss based on outrageous government conduct, (2) failed to review discovery with him, (3) failed to investigate, (4) failed

12

to submit a plea counteroffer to the State, (5) failed to review the community custody conditions, and (6) failed to object when the State proposed limiting his contact with his biological children to phone or video contact. We disagree.

## A. LEGAL PRINCIPLES

To show ineffective assistance of counsel, the defendant must demonstrate (1) that their counsel's performance was deficient and (2) that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 35, 296 P.3d 872 (2013). Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). We strongly presume that counsel's performance was reasonable. *Id.* Generally, counsel's performance is not deficient when counsel's conduct can be characterized as a legitimate trial strategy or tactic. *Id.* To show prejudice—the second prong of the *Strickland* test—the defendant must demonstrate a reasonable probability that the outcome of the proceeding would have been different if counsel had not performed deficiently. *See State v. Bertrand*, 3 Wn.3d 116, 129, 546 P.3d 1020 (2024).

If a petitioner establishes prejudice under the *Strickland* test, they have necessarily met their burden to show actual and substantial prejudice in the context of a PRP. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012). But a petitioner is still required to meet their evidentiary burden to state with particularity facts that, if proven, would entitle them to relief. *See id.*; *Rice*, 118 Wn.2d at 886.

A guilty plea does not generally waive a claim of ineffective assistance of counsel if the claim is related to the voluntariness of the plea. *In re Pers. Restraint of Schorr*, 191 Wn.2d 315, 321 n.2, 422 P.3d 451 (2018). But a guilty plea waives an ineffective assistance of counsel claim if it is unrelated to the circumstances of the plea, including if it relates to alleged deficient performance that occurred prior to the guilty plea. *See State v. Sharpe*, 30 Wn. App. 2d 766, 776-77, 546 P.3d 1046 (2024) (holding that defendant's ineffective assistance of counsel claims related to his counsel's failure to argue that a confession was coerced at a CrR 3.5 hearing were waived by guilty plea).

B. APPLICATION

Broadly categorized, Gillette makes six arguments of ineffective assistance of counsel. Four of these categories relate to alleged conduct that occurred before the entry of his guilty plea. These include Gillette's arguments that his counsel was deficient for (1) failing to file a pretrial motion to dismiss based on outrageous government conduct, (2) failing to review discovery with him, (3) failing to investigate (including not reviewing a similar post on the skipthegames website, not obtaining surveillance footage from the gas station, and not obtaining bank statements related to the $80 in cash he possessed), and (4) failing to submit a plea counteroffer to the State for "lesser charges." Amended Pet. at 16.

Gillette makes no persuasive argument that any of these categories relate to whether his guilty plea was voluntary. For only one of these categories does he even try. Related to the alleged failure to file a motion to dismiss, Gillette, for the first time in his reply brief, contends that his counsel's conduct impacted whether his plea was voluntary because he "accepted" the plea "with the understanding [that] [his] counsel" did not have the ability to "motion to dismiss" and that he

would not have pled guilty if his counsel had filed a pretrial motion to dismiss. Reply to State's Response at 5. Stated another way, Gillette appears to be arguing that his counsel's adherence to the plea offer's requirements made Gillette's acceptance of the offer involuntary (the plea offer stated that if defense counsel filed any motions, the offer would be deemed "reject[ed]"). Resp. to PRP App. at 31. Even addressing this argument made in Gillette's reply, we are unpersuaded that the adherence of Gillette's counsel to the plea offer has any connection to the voluntariness of Gillette's plea. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (we need not address arguments made for the first time in reply). Gillette knew that his counsel was prohibited from making a motion to dismiss, yet chose to plead guilty anyway. Nothing in our record shows that Gillette was compelled to take the offer. As a result, none of these four categories of arguments relate to the voluntariness of Gillette's plea and, thus, they are waived. *See Sharpe*, 30 Wn. App. 2d at 776-77.

Gillette's two remaining arguments of ineffective assistance of counsel—failing to review the community custody conditions, and failing to object to community custody condition 2 (limiting his contact with his biological children)—cannot be rejected so easily on the basis of waiver because they directly relate to the guilty plea itself.

As for Gillette's first plea-related argument that his counsel failed to review his community custody conditions with him, the record does not support this claim. Near the end of sentencing, the superior court asked Gillette if his counsel had "gone over" Appendix H with Gillette (Appendix H included many of the community custody conditions). VRP at 18. Gillette said, "Yeah, I suppose." *Id.* At which point, Gillette's counsel told the superior court that he would review the community custody conditions "again" with Gillette. *Id.* When the superior court later

15

asked Gillette whether he had an opportunity to review the judgment and sentence and Appendix H with his counsel, Gillette said yes and that he did not have any questions about them. On this record, Gillette has failed to meet his evidentiary burden and, consequently, this claim fails.[2]

Gillette's second plea-related claim for ineffective assistance of counsel appears to be that his counsel failed to object when the State proposed limiting his contact with his biological children to phone or video contact in the context of condition 2 of Appendix H. Gillette is factually incorrect; although Gillette suggests that jail communication records are supportive of this claim, Gillette's counsel actually did object to condition 2 and argued that Gillette should be allowed to have contact with his biological children. This objection triggered a discussion between the superior court and Gillette's ex-wife about potential conduct with the children. As a result, the superior court modified condition 2 to permit contact by phone or video or even "as requested by bio[logical] mother." VRP at 20. Thus, Gillette fails to establish a factual basis for this claim.[3]

Because all of his claims are either waived by his guilty plea or not sufficiently supported, we reject Gillette's claims for ineffective assistance of counsel.

---

[2] Gillette also appears to make the self-serving claim that his counsel told him that the community custody conditions would not infringe on his parental rights. But Gillette does not explain how, if true, the outcome of the proceeding would have been different. So, this claim also fails.

[3] Gillette also appears to suggest that his counsel was deficient when he did not object when the trial court appeared to bar him from being able to go to church (in its oral ruling, the trial court noted that Gillette would not be able to attend church because he was prohibited from contact with minor aged children). But in this context, to establish deficient performance Gillette must first show that if his counsel had objected to the condition, the objection would have likely been successful. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007). Demonstrating that such an objection would have been successful is unlikely, and Gillette has made no attempt to do so.

No. 59610-5-II

CONCLUSION

We grant in part, and deny in part, Gillette's PRP. As conceded by the State, we remand to the superior court to revise condition 4 of Appendix H and to strike the condition contained in his judgment and sentence related to evaluation and treatment of a substance use disorder. Otherwise, we reject Gillette's arguments.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

MAXA, P.J.

GLASGOW, J.